CARRAGAN v. COMMISSIONER OF
INTERNAL REVENUE.

No. 212, Docket 22238.

United States Court of Appeals,
Second Circuit.

Argued April 15, 1952.

Decided May 12, 1952.

John G. Turnbull, New York City, for petitioner.

Ellis N. Slack, Washington, D. C. (Robert N. Anderson and Morton K. Rothschild, Washington, D. C., of counsel), for respondent.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and FRANK, Circuit Judges.

FRANK, Circuit Judge.

1. Petitioner was employed by the Japanese-owned Takamine corporation and its immediate predecessor from 1916 until its liquidation in 1942. On May 20, 1942, when the liquidation had been largely completed, its board of directors adopted the following resolution:

> "WHEREAS, the liquidation of Takamine Corporation has been substantially completed; and

> "WHEREAS, in accordance with precedent, the directors deem it fitting and proper to recognize the length of time its officers and employees have served the Corporation and the value of their services by granting to each, respectively, a severance allowance commensurate;

> "Now, therefore, be it RESOLVED that the following severance allowance be paid:

> "Sydney B. Carragan, in recognition of the faithful services rendered to the Corporation and its predecessors over a period of 26 years and for which services, the compensation received by Mr. Carragan has been entirely inadequate, the sum of $19,200."

Attached to the application made by Takamine to the Secretary of the Treasury for permission to pay the severance allowance was the following statement:

> "The facts that actuated the Board of Directors of Takamine Corporation in fixing the respective allowances in the amounts specified are as follows: Mr. Carragan was first employed by a predecessor of Takamine Corporation in 1915, and during the 26 years since that time he has served the Corporation and its predecessors continuously. During that period he has been in full charge of its foreign business, both export and import. * * * For the last five years he has been the chief operating executive of the Corporation * * * He has received a very low salary at all times with the understanding that, if he made the Corporation prosper, he would be rewarded with a substantial

interest in it. His base salary has been $4800 a year since 1938, and prior thereto it was even less. Bonus payments for the last few years have averaged about $2,700 a year. Because of the liquidation of the Corporation it will be impossible for Mr. Carragan to secure the benefit of the work he has done. * * * Mr. Carragan has devoted 26 years to the work of Takamine Corporation and its predecessors. He has amply earned the severance allowance of $19,200."

On the basis of these statements by Takamine, the Tax Court found that the allowance was additional compensation to petitioner for his past services and not a tax-free gift.[1] Petitioner attacks this conclusion on several grounds. The first is that petitioner was amply compensated for his services by his yearly salary and bonuses (a schedule of which is set out in the note.[2] The Board of Directors apparently did not

think so, however, for it said "he has received a very low salary at all times"; and we are inclined to think the schedule bears this out, at least as to the early years of petitioner's employ.

■■ The second ground is that Takamine was being liquidated and therefore had nothing to gain in services or good-will by payment of additional compensation to its employees; the payment, it is urged, was a gratuity, pure and simple. Unlike the law of contracts, however, the Internal Revenue Code recognizes past consideration as a valid exchange for present compensation. It does not matter that the corporation had nothing but a clearer conscience to gain from the payment of adequate compensation for past services. It suffices that, as the Tax Court found here, those services motivated the payment.

■ Finally, petitioner argues in support of his gift theory that the corporation did

1. Petitioner complains because the Tax Court mentioned in its opinion that the government argued "with considerable force" that the Trading With The Enemy Act of 1917, 50 U.S.C.A.Appendix, § 1 et seq., applied to Takamine in 1942 to require permission from the government for all its expenditures, and that, under that statute, payments could only be made as "claims for services rendered,"

i.e., as compensation and not as gifts. Now it appears that perhaps the Act was not applicable to Takamine in 1942. It is clear to us, however, that this was not a controlling argument with the Tax Court. Immediately afterwards, the opinion went on, "In any event, we think that the evidence fails to establish that the payment * * * was a gift rather than compensation for services."

2. *Taxpayer's Earnings 1923–1941*

| Fiscal Year Ending | Salary | Bonus | Total Compensation | Earnings of Corporation Before Payment of Bonus (Profit) | (Loss) |
|---|---|---|---|---|---|
| 1923 | $4,100 | — | $ 4,100 | — | — |
| 1924 | 4,400 | — | 4,400 | — | — |
| 1925 | 4,600 | — | 4,600 | — | — |
| 1926 | 5,000 | — | 5,000 | — | — |
| 1927 | 4,877 | $ 300 | 5,177 | — | — |
| 1928 | 4,800 | 200 | 5,000 | — | — |
| 1929 | 4,800 | 700 | 5,500 | — | — |
| 1930 | 5,400 | 250 | 5,650 | $ 6,416 | — |
| 1931 | 5,400 | 75 | 5,475 | 7,770 | — |
| 1932 | 4,700 | — | 4,700 | — | $20,620 |
| 1933 | 3,870 | 75 | 3,945 | — | 21,076 |
| 1934 | 4,620 | 400 | 5,020 | 8,497 | — |
| 1935 | 4,000 | 850 | 4,850 | 11,331 | — |
| 1936 | 4,200 | 600 | 4,800 | 9,892 | — |
| 1937 | 4,800 | 500 | 5,300 | 25,542 | — |
| 1938 | 4,800 | 2,042 | 6,842 | 18,273 | — |
| 1939 | 4,800 | 3,650 | 8,450 | 21,679 | — |
| 1940 | 4,800 | 5,550 | 10,350 | 32,434 | — |
| 1941 | 4,800 | 3,000 | 7,800 | 9,502 | — |

not deduct the payment as a salary expense on its books or return. This, as we have decided before—Nickelsburg v. Commissioner of I. R., 2 Cir., 154 F.2d 70, 72— is not controlling; especially is it not here, where the corporation earned no taxable profits in the year in which the payment was made, and so could not have hoped to profit taxwise by charging the payment off as a business expense. Both petitioner and a chief stockholder testified that they conceived of the payment as a gift; but the Tax Court was entitled to disbelieve them and to rely on the contrary statements in the resolution and on the circumstances surrounding the gifts.

■ There is in fact a so-called "presumption" that an employer gives such an allowance to a present employee for services rendered and not out of altruism. Willkie v. Commissioner of I. R., 6 Cir., 127 F.2d 953, certiorari denied 317 U.S. 659, 63 S.Ct. 58, 87 L.Ed. 530. Such a case differs from Bogardus v. Commissioner of I. R., 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32, where the Supreme Court held as gifts and not compensation, allowances voted by stockholders of a new corporation to employees of the old corporation whose assets the new corporation took over, the employees not being in the service of the new corporation. Even if, as petitioner maintains, part of the allowance here were to be regarded as additional compensation for the years 1916–1923 when petitioner worked for Takamine's predecessor, the Bogardus case would still not apply, for petitioner, unlike the employees in that case, continued in the service of the new corporation after 1923, giving it the benefit of his experience and business contacts, and was still an employee at the time of the payment.

■ Petitioner makes what appears to be an even more untenable argument, i. e., that,

if the payment be considered additional compensation for the years 1916–1942, then section 139(a) of the Revenue Act of 1942, 26 U.S.C.A. § 107 [3] compels apportionment of the payment, taxwise, over those years. That section applies only where "80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more * * * is received or accrued in one taxable year". Patently, the 80% requirement is not satisfied here. Petitioner suggests that the allowance is to be considered an "independent payment" for this purpose, but the statute clearly applies to 80% of the *total* compensation for personal services in the period in question, and in this case such a total must include all salary and bonuses earned from Takamine and its predecessors in those years.[4]

■ 2. The second point in petitioner's brief concerns room and board expenses during 1944 in Philadelphia where he worked during the week on a war job. His permanent residence was in New York, to which he commuted on weekends. Petitioner is fifteen years too late with his argument that living expenses in Philadelphia, his place of business, are deductible as "traveling expenses * * * while away from home in the pursuit of a trade or business". 26 U.S.C.A. § 23(a)(1)(A). A nation of city-hoppers and suburbanites though we may be, the Supreme Court has steadfastly refused to say that traveling expenses are incurred in the pursuit of business when they stem from the petitioner's refusal to bring his home close to his job. The job, not the taxpayer's pattern of living, must require the travel. Commissioner of I. R. v. Flowers, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203. We see no merit to petitioner's argument that his job was so tem-

3. Section 139(a) of the 1942 Revenue Act is as follows:
"(a) Personal services. If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any

part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of such period which precedes the date of such receipt or accrual."

4. See note 2, supra.

porary—*i. e.*, "for the duration"—that the Flowers rule is inapplicable.

Affirmed.