## COMMISSIONER OF INTERNAL REVENUE
### v. STIDGER ET UX.

No. 173. Argued January 16, 1967.—Decided March 20, 1967.

*Assistant Attorney General Rogovin* argued the cause for petitioner. With him on the brief were *Solicitor General Marshall, Jack S. Levin, Robert N. Anderson* and *Albert J. Beveridge III.*

*John A. Reed,* by invitation of the Court (385 U. S. 925), argued the cause and filed a brief, as *amicus curiae,* in support of the judgment below.

MR. CHIEF JUSTICE WARREN delivered the opinion of the Court.

In this case we are required to determine whether, under the 1954 Internal Revenue Code, expenditures for meals by a military officer stationed at a post to which his dependents were prohibited from accompanying him were deductible "traveling expenses . . . [incurred] while away from home" within the meaning of § 162 (a)(2)[1]

---

[1] "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

"(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a

or whether instead they were nondeductible "personal, living, or family expenses" within the meaning of § 262.[2] At all pertinent times, respondent[3] was a captain in the United States Marine Corps, attached to an aviation squadron. Immediately prior to October 1957, his permanent duty station was a Marine Corps base located at El Toro, California, and he lived nearby with his wife and children. On October 1, 1957, however, respondent and his squadron were transferred to Iwakuni, Japan, where they were to be based while serving a standard 15-month tour of duty in the Far East. Because dependents were prohibited from accompanying Marine Corps personnel to that duty station, respondent's wife and children remained in California.

Of the 14½ months' actual duration of respondent's Far Eastern tour of duty, he was physically located at the Iwakuni base for 10 months. The remaining time was consumed by travel and short periods of duty at various other military bases; respondent was declared to be in a "travel status" for a period of 49 days, and he received additional compensation for those days on a per diem basis. During the entire period of his service as a Marine Corps captain, both while he served at bases in the United States and while he served abroad away from his family, respondent also received tax-free monthly allowances for quarters and subsistence.

On his 1958 income tax return, respondent claimed

trade or business . . . ." § 162 (a) (2) of the Internal Revenue Code of 1954, 26 U. S. C. § 162 (a) (2) (1958 ed.).

[2] "Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses." § 262 of the Internal Revenue Code of 1954, 26 U. S. C. § 262.

[3] Since a joint income tax return was filed by Captain and Mrs. Stidger, both are respondents here. In this opinion, however, the terms "respondent" and "taxpayer" refer only to Captain Stidger.

a deduction of $650, representing the cost of his meals at a rate of $65 per month for the 10 months spent at the Iwakuni base. The Commissioner of Internal Revenue disallowed the deduction, ruling that the expenditure for meals was a "personal, living" expense under § 262 and not a travel expense under § 162 (a)(2). In the Commissioner's view respondent's "home" during the period in question was his permanent duty station at Iwakuni rather than California where his family resided; therefore, he was not "away from home" when he incurred the expenditure. The Tax Court upheld the Commissioner (40 T. C. 896), and respondent petitioned for review in the Court of Appeals for the Ninth Circuit. That court, in a *per curiam* decision with one judge dissenting, reversed the Tax Court and rejected the Commissioner's definition of "home" for purposes of the deduction. 355 F. 2d 294. The majority of the Court of Appeals ruled that the word "home" as used in § 162 (a)(2) of the Code must be given its usual meaning as the place of residence, not the place of business, of the taxpayer and his family. And since it was not reasonable for this taxpayer to move his family residence closer to his place of business, the "ordinary and necessary" requirement applicable to all § 162 deductions was met and the cost of meals at Iwakuni was deductible To resolve a direct conflict between this decision and a 1948 decision of the Court of Appeals for the Fourth Circuit in another case involving a military officer, *Bercaw* v. *Commissioner*, 165 F. 2d 521, we granted certiorari. 385 U. S. 809.

This case then requires us to focus upon one of the three conditions which must be met before an item is deductible as a travel expense under § 162 (a)(2). There is no question but that the expenditure here was "ordinary and necessary" and that there was a "direct con-

nection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer." Cf. *Commissioner* v. *Flowers,* 326 U. S. 465, 470 (1946); *Peurifoy* v. *Commissioner,* 358 U. S. 59 (1958). The essence of the case is whether respondent was "away from home" when he incurred the expenditure. And the answer to that question turns upon a determination of whether, under the circumstances related above, respondent's "home" in 1958 was his permanent duty station at Iwakuni, Japan, or, instead, the residence of his family in California.

From the Revenue Act of 1921 [4] down to § 162 (a)(2) of the 1954 Internal Revenue Code Congress has provided a deduction from taxable income for travel expenses, including amounts expended for meals and lodging, while "away from home." Although Congress has not defined the crucial phrase "away from home," administrative rulings and regulations have been directed toward that problem. In 1921, a general rule was established to the effect that "home" meant the taxpayer's principal place of business or employment whether or not it coincided with his place of residence.[5] This interpretation prevented deductions of day-to-day commuting expenses which were not the unusual type of "traveling expense" to which the statute was directed. Cf. *Commissioner* v. *Flowers,* 326 U. S. 465, 470 (1946). Its logic has been applied to a host of other situations. Although certain refinements have been added,[6] the essential position of the Commissioner has remained unchanged.

---

[4] Revenue Act of 1921, c. 136, § 214 (a), 42 Stat. 239.

[5] O. D. 864, 4 Cum. Bull. 211 (1921); O. D. 1021, 5 Cum. Bull. 174 (1921).

[6] See, *e. g.,* I. T. 1490, I-2 Cum. Bull. 89 (1922); Rev. Rul. 60-189, 1960-1 Cum. Bull. 60. See also note 22, *infra.*

While the court below,[7] together with the Courts of Appeals for the Fifth [8] and Sixth [9] Circuits, has not always agreed with this interpretation, the Tax Court [10] and all of the other courts of appeals which have considered it have sustained the Commissioner.[11] The Commissioner's interpretation of the word "home" in connection with travel-expense deductions was also made clear to Congress when in 1936 it was held that Members of Congress could not deduct expenses which they incurred in Washington, D. C., even though each also maintained a residence in the district from which he had been elected. *Lindsay v. Commissioner*, 34 B. T. A. 840. Congress did

---

[7] In addition to the instant case, see also *Wright v. Hartsell*, 305 F. 2d 221 (C. A. 9th Cir. 1962).

[8] *Steinhort v. Commissioner*, 335 F. 2d 496 (C. A. 5th Cir. 1964); *United States v. Le Blanc*, 278 F. 2d 571 (C. A. 5th Cir. 1960).

[9] *Burns v. Gray*, 287 F. 2d 698 (C. A. 6th Cir. 1961).

[10] See, *e. g., Friedman v. Commissioner*, 37 T. C. 539 (1961); *Carroll v. Commissioner*, 20 T. C. 382 (1953). The facts of the *Carroll* case are closely analogous to the circumstances surrounding the claimed deduction here. The taxpayer there was an employee of the War Department who in 1947 was transferred to a "permanent duty station" in Korea for a minimum of one year. His wife and child remained in the United States. A deduction for the cost of meals and lodging while in Korea was not allowed by the Tax Court which noted that the taxpayer's employer (1) designated Korea as a "permanent duty station" and (2) granted per diem travel allowances only while the taxpayer was en route to and from Korea, not while he was based there. See also *Todd v. Commissioner*, 10 T. C. 655 (1948).

[11] See, *e. g., O'Toole v. Commissioner*, 243 F. 2d 302 (C. A. 2d Cir. 1957); *Coerver v. Commissioner*, 297 F. 2d 837 (C. A. 3d Cir. 1962), affirming 36 T. C. 252 (1961); *Bercaw v. Commissioner*, 165 F. 2d 521 (C. A. 4th Cir. 1948); *England v. United States*, 345 F. 2d 414 (C. A. 7th Cir. 1965); *Cockrell v. Commissioner*, 321 F. 2d 504 (C. A. 8th Cir. 1963); and *York v. Commissioner*, 82 U. S. App. D. C. 63, 160 F. 2d 385 (1947). The Courts of Appeals for the First and Tenth Circuits apparently have not taken a position on this question.

not respond to this ruling by amending the statutory language generally to provide that "home" was intended to be synonymous with "residence," but instead merely carved out an exception to cover the special travel-expense problems inherent in service as a national legislator.[12]

The Commissioner argues that the fact that Congress has reviewed and re-enacted the pertinent language with an awareness of the administrative interpretation constitutes a legislative endorsement of the Commissioner's position and is sufficient reason for reversing the judgment below. *Helvering* v. *Winmill,* 305 U. S. 79 (1938). But it is not necessary for us to decide here whether this congressional action (or inaction) constitutes approval and adoption of the Commissioner's interpretation of "home" in all of its myriad applications since, in the context of the military taxpayer, the Commissioner's position has a firmer foundation. The Commissioner has long held that a military taxpayer's permanent duty station is also his home for purposes of determining deductibility of travel expenses. This position builds on the terminology employed by the military services to categorize various assignments and tours of duty, and also on the language and policy of the statutory provisions prescribing travel and transportation allowances for military personnel. For example, a Marine Corps directive, which was effective during respondent's Far

---

[12] 66 Stat. 467. The exception was carried over to the 1954 Code and now reads: "For purposes of the preceding sentence, the place of residence of a Member of Congress . . . within the State, congressional district, Territory, or possession which he represents in Congress shall be considered his home, but amounts expended by such Members within each taxable year for living expenses shall not be deductible for income tax purposes in excess of $3,000." 26 U. S. C. § 162 (a).

Eastern tour of duty, defined the length of standard tours of duty in terms of the commencement and termination dates of *"permanent* change[s] of station." [13] (Emphasis supplied.) Similarly, eligibility for certain statutory travel allowances turns upon whether an assignment constitutes a "change of *permanent* station" (emphasis supplied) or whether the serviceman is "away from his designated post of duty." 37 U. S. C. § 404 (a)(1). Thus, the Commissioner's position recognizes, as do the relevant statutes and the military services themselves, that the "permanence" of location in civilian life cannot find a complete parallel in military life which necessarily contemplates relatively frequent changes of location.

The nondeductibility of expenses incurred by a military taxpayer while at a permanent duty station was previously challenged in *Bercaw* v. *Commissioner,* 165 F. 2d 521 (C. A. 4th Cir. 1948). There, the taxpayer, a reserve army officer who was called to active duty and assigned to Fort Meade in Maryland where there were no quarters for dependents, sought to deduct expenditures for his meals and janitorial service as costs of traveling "away from home" in pursuit of his trade or business. The Court of Appeals affirmed the Tax Court's disallowance of the deduction, stating:

> "The taxpayer was engaged in the business of an Army officer. His place of business was his particular Army post. If his Army duties required him to travel, he would have received a per diem travel allowance which would not have been taxable. . . . But whenever he made a permanent change of station that place of duty became his place of business and there was his 'home'

---

[13] Marine Corps Order 1300.8B, c. 1, issued July 1, 1958. Record, p. 24.

within the meaning of Section 23 (a)(1)(A). . . .
Thus the expenditures for meals . . . while at
this post were personal living expenses and non-
deductible . . . ." 165 F. 2d, at 524.

Since the *Bercaw* decision, the Commissioner has reit-
erated his position in Rev. Rul. 55–571, 1955–2 Cum. Bull.
44. And until the decision of the court below in the
present case, neither the courts nor Congress had dis-
turbed the Commissioner's interpretation of "home" as
it pertained to military personnel.

Additional support for the Commissioner's position is
found in the fact that Congress traditionally has provided
a special system of tax-free allowances for military per-
sonnel.[14] These allowances now range from monthly
payments for quarters [15] and subsistence [16] to per diem
payments when the serviceman is declared in a "travel
status." [17] Provision may also be made for financial
relief to assist dependents in relocating when they are
prohibited from accompanying a serviceman on a change
of permanent duty station.[18] In the present case, re-
spondent received the per diem payments while he was
away from his permanent duty station. His quarters at
Iwakuni were provided without cost to him, and at the
same time he continued to receive a tax-free quarters
allowance of approximately $102.50 per month; [19] he also

---

[14] See generally Advisory Commission on Service Pay, Career
Compensation for the Uniformed Forces, Appendix 13–18 (1948).

[15] 37 U. S. C. § 403.

[16] 37 U. S. C. § 402.

[17] 37 U. S. C. § 404. See also 37 U. S. C. §§ 405–412.

[18] 37 U. S. C. § 406 (h).

[19] 37 U. S. C. § 403 (d) provides: "A member of a uniformed
service who is assigned to quarters of the United States or a housing
facility under the jurisdiction of a uniformed service may not be
denied the basic allowance for quarters if, because of orders of com-
petent authority, his dependents are prevented from occupying those
quarters."

received a tax-free subsistence allowance of approximately $42.50 per month at all relevant times.. Moreover, because his assignment to Iwakuni was a change of permanent station, his wife and children could have moved their residence to another part of the United States at the Government's expense; however, they elected not to exercise that option.

Underlying the system of special allowances is congressional recognition of the fact that military life poses unusual financial problems.[20] The system is designed to provide complete and direct relief from such problems as opposed to the incomplete and indirect relief which an income tax deduction affords to a civilian business traveler.[21] If the system of allowances is in fact inade-

---

[20] In 1948, the Hook Commission, which had been appointed by the Secretary of Defense to study military compensation, issued its report and recommendations. Advisory Commission on Service Pay, Career Compensation for the Uniformed Forces (1948). That report formed a principal basis for the Career Compensation Act of 1949, c. 681, 63 Stat. 802. On the subjects of subsistence and quarters allowances, the Commission stated (Appendix, p. 17):

· "The theory behind the subsistence allowance is that since the officer is required to arrange and provide his subsistence at all times and since he has no choice as to the place where he is to be stationed and therefore does not have the choice of the average citizen as to the place and manner of subsisting himself, it is necessary to provide him with an allowance at all times so that he may bear that expense wherever stationed.

"Because an officer is transferred frequently from place to place and is required to dig up his roots at the old station and transplant them to the new station, the Government has acknowledged for years its obligation to furnish quarters to the officer for occupancy by himself and his dependents."

[21] Congress has through the years evidenced a determination to maintain the various allowances at levels consistent with the necessary financial burdens borne by servicemen. See, e. g., id., at 35 and Appendix 13–18; H. R. Rep. No. 779, 81st Cong., 1st Sess., p. 19. In 1963, Congress enacted yet another measure designed to provide

quate, or if there are inconsistencies in the Commissioner's application of the travel-expense provision to military personnel,[22] it is the province of Congress and the Commissioner, not the courts, to make the appropriate adjustments. Given the Commissioner's long-standing and judicially approved interpretation, the knowledge of that interpretation by Congress, and the fact that Congress has chosen to deal specially by tax-free allowances with the financial problems peculiar to military life, we must agree with the Commissioner that the military taxpayer is not "away from home" when he is at his permanent duty station whether or not it is feasible or even permissible for his family to reside with him there. The judgment is, therefore,

*Reversed.*

---

direct relief for dependents separated from servicemen on permanent duty outside this country or in Alaska. 37 U. S. C. § 427 (b). Under specified conditions, this provision authorizes an allowance of $30 monthly. It was established because Congress recognized that separated families incur additional expenses. See H. R. Rep. No. 208, 88th Cong., 1st Sess., p. 29. That recognition is, of course, the same one that underlies the travel-expense deduction for civilian taxpayers.

[22] The Commissioner has taken the position that a naval officer may deduct as a traveling expense the cost of his meals aboard ship while the ship is away from its home port. Rev. Rul. 55-571, 1955-2 Cum. Bull. 44. It is contended that respondent's situation at Iwakuni was directly analogous to that of a naval officer on a ship at sea for an extended period of time. The Commissioner justifies the discrepant treatment by arguing that a naval officer should be treated like the engineer of a train, a bus driver, or an airplane pilot for purposes of the travel-expense deduction; the principal place of business of such taxpayers is their home terminal and they are allowed the deduction when away from that terminal on business trips. We are not convinced that respondent's situation was in all relevant respects analogous to that of a naval officer at sea. In any event, during oral orgument we were advised that the Commissioner is re-examining his position with respect to naval officers.

Mr. Justice Douglas, with whom Mr. Justice Black and Mr. Justice Fortas concur, dissenting.

The resolution of this case depends upon whether respondent was "away from home" when he incurred the expenses.[1] The term "home" is not defined.

The Treasury's administrative rulings for many years have indeed treated the statutory word "home" as meaning a taxpayer's principal place of business or employment. See *Commissioner* v. *Flowers,* 326 U. S. 465, 471–472.. To me it is clear that home means residence, with the qualification that a taxpayer should establish his residence as near to his place of employment as is reasonable. *Ibid.* Here the taxpayer was forbidden by military orders to take his family with him. He was, in other words, barred from taking his home with him whenever he went on military orders. The Commissioner points to the difficulty of having any rule other than the fixed one that "home" means the taxpayer's principal place of business or employment. It is said that if the rule is not rigid, a great complex of facts would have to be considered: adequacy of housing at the new post, expense of moving, school facilities, health of the family, the need to care for elderly or ailing relatives, and the like. Only a fixed rule provides certainty, it is said; any other would threaten the desire for uniformity.

---

[1] Section 162 of the Internal Revenue Code of 1954 provides in relevant part:

"(a) In General.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

"(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business . . . ."

While equity is seldom an ingredient of the tax laws, while they are indeed inherently discriminatory in many ways, reflecting perquisites obtained by pressure groups,[2] we need not increase their harshness by giving simple words unusual or strained meanings—unless of course Congress has plainly made an arbitrary choice.

If the taxpayer chooses to maintain his residence at a place far removed from his place of business, the travel expenses are not "ordinary and necessary" since not dictated by business needs. *Commissioner* v. *Flowers, supra.* On the other hand, if the taxpayer cannot reasonably maintain his residence at his place of business, the travel expenses are "ordinary and necessary" and hence deductible. Such an interpretation would give effect to the congressional policy of allowing a deduction for expenses dictated by the needs of the taxpayer's employment.

In this case there can be no question that the expenses were incurred in the pursuit of the taxpayer's employment and that respondent could not move his residence to Iwakuni. There can be no question that the expenses were motivated by "[t]he exigencies of business rather than the personal conveniences and necessities of the" respondent. *Commissioner* v. *Flowers, supra*, at 474. I cannot see how the result is changed simply because respondent is a member of the armed services. The fact that Congress has afforded members of the military special allowances is no indication that Congress intended

---

[2] ". . . assume that a farmer has a herd of hogs. Each year he selects certain young to be bred. After each sow has one litter, she is turned out to be conditioned for slaughter. The profits on the sale of the pigs unbred are taxable as ordinary income. But the profits on the sale of the pigs bred once are taxable as capital gains. They have been held as business properties producing other pigs. The fact that all the pigs are equally destined to be sold and eaten is unimportant." Eisenstein, The Ideologies of Taxation 174 (1961).

that they not be allowed to deduct "ordinary and necessary" expenses incurred while away from their residence. Respondent received the same pay and basic allowances while in the Far East as he did while residing with his family in the United States. There was no increase to help defray the increased expenses incurred by him while required to live away from his family.