**Robert F. SIX and Ethel Merman Six, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 66 Civ. 2336.**

United States District Court
S. D. New York.

May 20, 1969.

Simon Presant, New York City, for plaintiffs.

Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, for United States, Samuel M. Eisenstat, Asst. U. S. Atty., of counsel.

MEMORANDUM

BONSAL, District Judge.

Plaintiff Ethel Merman Six (Miss Merman) brought this action for the refund of income taxes paid by plaintiffs in the year 1959. The Internal Revenue Service disallowed in plaintiffs' joint 1959 income tax return deductions of $20,625.84 for living and traveling expenses, and $6,173.00 for gowns, cosmetics, accessories and expenses of a similar nature, allegedly incurred while Miss Merman was performing in "Gypsy" in New York. Miss Merman paid the tax and brought this action. The government moves for partial summary judgment, pursuant to F.R.Civ.P. 56(b), dismissing the claim for refund of these items.

Miss Merman, a well-known actress, resided in New York City until 1953. In that year she married Robert F. Six of Denver, Colorado, who was president of Continental airlines and director of a Denver bank, and became a resident of Colorado. Miss Merman and her husband resided in an exclusive area of Englewood, Colorado. Their home was in the $100,000 class, and required substantial upkeep, most of which was borne by Miss Merman. Their two children lived with them and attended local schools prior to entering prep school in New York and college in Colorado.

Until Miss Merman began rehearsals in "Gypsy" in February of 1959 in New York, she had been appearing on occasional television programs. Miss Merman's contract for "Gypsy" was for the run of the play, but was not to exceed two years, and she states that she did not intend to stay with "Gypsy" for more than two years. She states she could not be sure of the success of "Gypsy," and that her stay in New York was "temporary."

"Gypsy" opened in Philadelphia in April and in New York in May, and was a hit; it closed in New York at the

end of 1960, and Miss Merman then went on the show's road tour. Around this time Miss Merman and Mr. Six were divorced.

While Miss Merman was appearing in "Gypsy," her husband and children remained in Denver. She took a year's lease, which she renewed, on an apartment at the Park Lane Hotel in New York, at an annual rent of $25,000. Miss Merman claims that she visited Denver four times during this period, while the government concedes only two visits. Her only employment in 1959 was in New York City.

The Internal Revenue Code of 1954, § 262, 26 U.S.C. § 262, which provides:

"Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses"

bars deduction of living and traveling expenses, unless they are deductible under Int.Rev.Code of 1954, § 162(a) (2), which provides:

"(a) *In general.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\*     \*     \*     \*     \*     \*

(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business."

It is the government's position that "home" for the purposes of § 162(a) (2) was Miss Merman's principal place of doing business in 1959, New York City, where she lived while performing in "Gypsy," and that therefore her living and traveling expenses are not deductible as not incurred "away from home," citing

" 'Home' as used in the statute means the taxpayer's principal place of business or employment." O'Toole v. Com-

missioner, 243 F.2d 302, 303 (2d Cir. 1957);

Commissioner v. Stidger, 386 U.S. 287, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967); and Carragan v. Commissioner, 197 F.2d 246 (2d Cir. 1952). *Stidger* is inapplicable as limited to military personnel, the Court stating,

"[I]t is not necessary for us to decide here whether this congressional action (or inaction) constitutes approval and adoption of the Commissioner's interpretation of 'home' in all of its myriad applications since, in the context of the military taxpayer, the Commissioner's position has a firmer foundation." 386 U.S. at 292, 87 S. Ct. at 1069.

*O'Toole* and *Carragan* followed the doctrine of Commissioner v. Flowers, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946), which held that such expenses are not deductible unless they are required by the "exigencies of business." The rule for which the government argues is not free from doubt, see 4A Mertens, Law of Federal Income Taxation § 25.93.

Miss Merman's profession as an actress necessarily called upon her to lead a peripatetic existence, but she did appear to have had a home in Denver in the usual sense of the word. A rule of law defining "home" as the taxpayer's principal place of business would under the circumstances seem inappropriate. It may well be that the reason for the lack of a clear-cut legal definition of "home" as it is used in § 162(a) (2) is that it is not ultimately a legal concept subject to a convenient rule, but is instead a factual matter dependent upon the circumstances of the particular case. See Pierce v. United States, 271 F.Supp. 165 (W.D.Ark.1967).

The government argues that if Miss Merman was "away from home" for the purposes of § 162(a) (2) her expenses were not required by the "exigencies of business," Commissioner v. Flowers,

*supra,* and that she is not entitled to the exception to that requirement recognized in Peurifoy v. Commissioner, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958) for "temporary" absences from home, because her absence was not "temporary." In *Peurifoy, supra,* the Court recognized the factual nature of the question whether absence from home is "temporary," 358 U.S. at 61, 79 S.Ct. 104.

■ Miss Merman should be given an opportunity to establish at trial facts which might prove that she was "away from home" in 1959 within the meaning of § 162(a) (2), and if she was, whether her absence from home was "temporary," and if not, whether the alleged deductions for living and traveling expenses were required by the "exigencies of business."

Miss Merman contends that she is entitled to deduct $6,173.00 for gowns, cosmetics, etc., under § 162(a), alleging that to some extent these expenses were incurred in connection with her professional appearances on the stage and television. This contention also raises a factual issue as to whether and to what extent these expenses were required by her profession.

The government's motion for partial summary judgment is denied.

It is so ordered.