Robert F. SIX and Ethel Merman (formerly Ethel Merman Six), Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 66 Civ. 2336.

United States District Court, S. D. New York.

Feb. 8, 1971.

See also D.C., 300 F.Supp. 277.

Simon Presant, New York City, for plaintiff Ethel Merman.

Whitney North Seymour, Jr., U. S. Atty., S. D. N. Y., by Michael E. Saltzman and Milton Sherman, Asst. U. S. Attys., New York City, for defendant.

CANNELLA, District Judge.

This is an action for a refund of federal income taxes paid by the plaintiff Ethel Merman as a result of the disallowance by the Internal Revenue Service [hereinafter "IRS"] of certain hotel and transportation costs as a "traveling expense" within the meaning of 26 U.S.C. § 162(a) (2).

The facts in this case are virtually undisputed. Miss Merman is a well-known entertainer who was born, raised and educated in New York. She has been in "show business" since 1930, performing mainly in the theatre on Broadway. In March, 1953, she married Robert F. Six, the President of Continental Airlines (headquartered in Denver, Colorado). Soon thereafter, they purchased jointly a house in Englewood, Colorado, and for the next seven years they shared the expenses of maintaining it. During most of this period, Miss Merman's two children from a prior marriage lived in this house and attended local schools. Miss Merman also stayed there during this period whenever she was not engaged in Broadway or television shows. In 1960, she and Mr. Six were divorced.

In late 1958, Miss Merman negotiated a contract through her agent in New York to star in a stage production on Broadway called "Gypsy". Rehearsals began in New York on February 11, 1959, and the show opened in Philadelphia on April 11th, running until May 16, 1959. It opened in New York five days later and closed on March 25, 1961. During this entire period, Miss Merman had a lease on a furnished apartment at the Park Lane Hotel in Manhattan. In accordance with the terms of the "Gypsy" contract, her employer paid the hotel bills which ensued.[1] She did not report this as additional income in filing her 1959 tax return, presumably considering it to be deductible as a "business expense."

After conducting an audit of the 1959 return, the IRS sent a "90-day letter" in 1963 to the plaintiffs which stated that they owed an additional tax of $32,949.-11 for 1959. They paid this deficiency in August, 1963, but in March, 1964, they filed a claim for a refund of this payment with the New York District Director of the IRS. In August, 1964, the claim was allowed to the extent of $6,411.94. The remainder of the claim, in the amount of $26,537.17, was disallowed on the basis that a total of $20,-625.81 in hotel expenses paid by Miss Merman's employer during 1959 amount-

---

1. The contract reads, in pertinent part:
    * * * In addition, the Manager agrees to pay. board, lodging and other living expenses of the Actress, exclusive of transportation (for which provision is made in Paragraph G hereof) for each day after the execution of this contract in which the Actress is away from Denver, Colorado, in connection with her services hereunder and continuing until her return to Denver after completion of her services hereunder * * *

The Manager agrees to reimburse the Actress, prior to the commencement of rehearsals, for the cost of round-trip, first-class transportation by air or railroad drawing room, as Actress may elect, between Denver, Colorado, and New York City.
Defendant's Exhibit D, pp. 2, 4.

ed to income to her and that other expenditures on her part amounting to $9,665.41 were not deductible.

The parties stipulated at the time of trial herein that expenses in the amount of $2,500 of the disputed sum of $9,665.41 are allowable as a deduction and $3,129 are not. The question then is whether the remaining $4,036.41 in transportation costs plus the $20,625.81 in hotel expenses are "traveling expenses" within the meaning of the Internal Revenue Code.

The court has jurisdiction under 28 U.S.C. § 1346(a).

Section 162 of Title 26, U.S.C. reads, in pertinent part:

> (a) *In general*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying out any trade or business, including—* * *
>
> (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business.

It is not disputed that the expenses in question were reasonable and necessary for food and lodging and that they were incurred in the pursuit of a trade or business. The narrow issue therefore is whether these sums were expended while Miss Merman was "away from home." "Home" has been defined by the Commissioner of Internal Revenue and by the Tax Court as the taxpayer's principal place of business or employment, and this definition has been adopted by a majority of the circuit courts, including the Court of Appeals for the Second Circuit.[2] See, e. g., Commissioner of Internal Revenue v. Stidger, 386 U.S. 287,

291 & n. 11, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967); O'Toole v. Commissioner of Internal Revenue, 243 F.2d 302, 303 (2d Cir. 1957). This definition has been refined to mean where a taxpayer is employed regularly. Thus, a taxpayer employed elsewhere temporarily may deduct expenses incurred during the temporary employment. Coburn v. Commissioner of Internal Revenue, 138 F.2d 763 (2d Cir. 1943).

Miss Merman contends that her principal place of business was Englewood, Colorado. She testified that she received calls for jobs, read scripts, and conducted negotiations at her Colorado residence. The court finds, however, that Miss Merman has performed on Broadway during most of her professional career.[3] In addition, she has appeared on numerous television shows originating in New York.[4] In contrast, Miss Merman has never performed professionally in Englewood, Colorado. Moreover, all offers of employment made to her were screened by her agent in New York, and it was this agent who negotiated the contract for "Gypsy", which Miss Merman signed in New York. The court finds that Miss Merman's business contacts and activities in New York City were greater in both number and importance than those in Englewood, Colorado and that New York City was therefore her principal place of business in 1959. Thus, the hotel and related expenses incurred in New York in that year were not traveling expenses within the meaning of the Internal Revenue Code. Cf. Coburn v. Commissioner of Internal Revenue, *supra*.

Furthermore, the court finds that both Miss Merman and Mr. Six maintained residences near their individual principal places of business for their

---

2. The Supreme Court has been confronted with the concept of "home" on several occasions. See Commissioner of Internal Revenue v. Stidger, 386 U.S. 287, 292, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967); Peurifoy v. Commissioner of Internal Revenue, 358 U.S. 59, 79 S.Ct. 104, 3 L.Ed.2d 30 (1958); Flowers v. Commis-

sioner of Internal Revenue, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946). See also 4A Mertens, Law of Federal Income Taxation § 25.93.

3. See Trial Minutes, p. 35; Defendant's Exhibit B.

4. See Trial Minutes, pp. 21–22, 36.

own convenience. Having thus established separate tax "homes", it would be contrary to the rationale of Section 162 to allow either of them, in this case Miss Merman, to deduct the expenses arising from the upkeep of the separate residence and the travel to and from the residence of the other. See, e. g., Robert A. Coerver v. Commissioner of Internal Revenue, 36 T.C. 252 (1961), affd., 297 F.2d 837 (3d Cir. 1962). It is the job and not the taxpayer's pattern of living which must require the traveling expense. Carragan v. Commissioner of Internal Revenue, 197 F.2d 246 (2d Cir. 1952). See also Barton v. Commissioner of Internal Revenue, 424 F.2d 1295 (7th Cir. 1970).

In view of the foregoing, the complaint is hereby dismissed, and the parties are directed to settle an order in conformity with this opinion, which represents the court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, and the stipulation of December 2, 1970 allowing $2,500 as a deduction.

So ordered.