Roberta C. EGAN, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 3411.

United States District Court, D. Delaware.

May 7, 1971.

Richard L. Sutton, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Peter O. Clauss and Edward C. Toole, Jr., of Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for plaintiff.

F. L. Peter Stone, U. S. Atty., Wilmington, Del., and Herbert Grossman, Dept. of Justice, Washington, D. C., for defendant.

## OPINION

CALEB M. WRIGHT, Chief Judge.

This is an action jurisdictionally grounded on 28 U.S.C. § 1346(a) (1) by plaintiff, Roberta C. Egan, seeking a refund of taxes paid pursuant to deficiency assessments for the taxable years 1959 through 1963. The case had already been set for trial when the government filed this motion for summary judgment or, in the alternative, for the Court to make a limiting order pursuant to Rule 56(d) of the Federal Rules of Civil Procedure.

Certain pertinent facts are not in dispute; others are disputed by the government although for purposes of this motion the government is willing to concede them; still other "facts" are controverted although generally these issues are more aptly described as interpretations of the facts.

The plaintiff is the widow of Captain William R. Egan, who was a first-class river pilot on the Delaware River and Bay in April 1958 when he was elected to his first one-year term as President of the Pilots Association for the Bay and River Delaware. The 1958 election was fairly close, Captain Egan receiving 41 votes to his opponent's 33, but thereafter his margin of victory was usually more comfortable.[1] He was elected to

---

1. According to the Answers to Interrogatories the election results were as follows with Captain Egan's vote stated first: 1958—41, 33; 1959—55, 16, 10; 1960—64, 17; 1961—51, 41; 1962—70, 18; 1963—51, 41.

five more terms and died in office on January 14, 1964, prior to the 1964 election. Plaintiff argues that these elections were "hotly contested" while the government contends that they were mainly "personality contests" which the deceased could, in 1958, anticipate winning for some time. Under the view of the law that the Court takes in this opinion, this dispute is irrelevant.

It is undisputed that Captain Egan was required by his employment as President of the Pilots Association to spend most of his working time in Philadelphia because the main office of the Association was there as well as a substantial portion of the facilities and activities that the President was supposed to oversee, and all of the records, clerical help and non-pilot employees of the Association. Similarly, it is not disputed that the Captain was required to have a residence in the Philadelphia area since his day-to-day activities centered in downtown Philadelphia—with the exception of a weekly trip to Lewes, Delaware, to inspect the station boat and other facilities there. The trip, which (the government apparently concedes) was required by his official duties, to Lewes from Philadelphia took approximately 3 and ½ hours.

Prior to his election as President, Captain Egan and plaintiff had lived for many years in Lewes, and they continued to maintain their residence there during his years in office. In addition, Captain Egan rented a small, furnished apartment and garage space in Philadelphia where he usually spent four nights a week. The rental amounts are not challenged as being extravagant; in fact, the government agrees that they were quite reasonable.

In each of the years 1959 through 1963, Captain and Mrs. Egan claimed deductions for apartment and garage rents in Philadelphia.[2] The Internal Revenue Service disallowed these deductions and the plaintiff eventually paid the deficiencies pursuant to a settlement with the government which allowed plaintiff to later institute administrative proceedings for a refund and, if that was unsuccessful, court action. Plaintiff filed claims for each of the years in question with the District Director on December 27, 1965, each of which contained the following statement:

■ The reasons assigned for this claim for refund are as follows:

(1) Rentals paid by Captain Egan for an apartment and garage in Philadelphia, Pennsylvania were properly deductible as travel and lodging expenses incurred in the course of business while away from home.[3]

The argument between the plaintiff and the government is simply stated in terms of the Internal Revenue Code as whether the rentals Captain Egan paid are properly considered deductible as necessary business expenses for lodging under § 162(a)(2) or as non-deductible personal living expenses under § 262, 26 U.S.C. §§ 162(a)(2), 262.

---

2. There were other claimed deductions that the IRS at first disallowed and then reinstated, e. g., for expenses for the trips to and from Lewes, that are not relevant in this case.

3. The claims for 1961, 1962 and 1963 also stated as a further reason for the claimed refund that the proper deduction of the rentals would result in a reduction in adjusted gross income sufficient to increase the medical deductions. This, of course, is irrelevant to this motion; thus, the sole reason plaintiff tendered to the IRS for the refund is that quoted above. That is the sole claim, therefore, that this Court can consider under the Internal Revenue Code and appropriate regulations. See § 7422(a) of the Code; 26 C.F.R. § 301.6402–2(b)(1); United States v. Andrews, 302 U.S. 517, 58 S.Ct. 315, 82 L.Ed. 398 (1938). The Court notes in passing, however, that plaintiff's new theory that the expenditures could be deducted as entertainment expenditures is without merit on this record.

During most of the relevant taxable years,[4] § 162(a) (2) provided that the taxpayer could deduct "traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business." The main dispute before this Court centered on the meaning of the phrase "away from home." Plaintiff argued that the "home" in the statute is either the actual place of residence or, in some cases, a person's place of employment if he subjectively believes that he will be stationed in a place other than his residence for a long period of time. The government argues simply that a host of authority supports its view that "home" means "tax home" which is a person's principal place of business or employment.

From all of the authorities brought to this Court's attention and those that further researches have uncovered, it is apparent that the government's view of the meaning of "home" in § 162 is the correct one, at least in this Circuit. See, e. g., Commissioner of Internal Revenue v. Stidger, 386 U.S. 287, 290, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967); Jenkins v. Commissioner of Internal Revenue, 418 F.2d 1292, 1293 (8th Cir. 1969); Commissioner of Internal Revenue v. Mooneyhan, 404 F.2d 522, 527 (6th Cir. 1968); England v. United States, 345 F.2d 414, 417 (7th Cir 1965); Coerver v. Commissioner of Internal Revenue, 297 F.2d 837 (3rd Cir. 1962), affirming, 36 T.C. 252 (1961); O'Toole v. Commissioner of Internal Revenue, 243 F.2d 302, 303 (2nd Cir. 1957). Plaintiff concedes, as she must, that Captain Egan's principal place of business was Philadelphia. Based on the authorities cited, it is quite apparent that Captain Egan's tax home during the years in question was the city of Philadelphia. The only shadow

of doubt that is cast on that conclusion is the matter of the alleged inspection trips to Lewes every Friday. Granting the plaintiff every inference in her favor, it still could not possibly be shown that the weekly Lewes trip taking less than a day—however necessary it may have been to the proper carrying out of the Captain's duties—shifted his principal place of business and, thus, his tax home from Philadelphia to Lewes.

The single question remaining, therefore, is whether Captain Egan's employment in Philadelphia was "temporary" or whether it was "indefinite" or "indeterminate" within the meaning of the appropriate caselaw. This issue must be decided because the cases clearly hold that if a taxpayer is employed only "temporarily" in a certain place his expenses are considered to be deductible, although if he is employed in that place "indefinitely" or for an "indeterminate" length of time he is not considered to be traveling away from home. See, e. g., Peurifoy v. Commissioner of Internal Revenue, 358 U.S. 59, 79 S.Ct. 104, 3 L. E.2d 30 (1958). In Peurifoy the Court did not clearly adopt the distinction between "temporary" and "indefinite," but stated instead that, assuming the validity of the rule, continuous periods in excess of 20, 12 and 8 months respectively were each not "temporary" for the construction workers involved in that case. Other federal courts have more specifically approved or openly adopted the temporary-indefinite distinction. See, e. g., Chimento v. Commissioner of Internal Revenue, 438 F.2d 643 (3rd Cir. 1971); Cockrell v. Commissioner of Internal Revenue, 321 F.2d 504, 507 (8th Cir. 1963); Wright v. Hartsell, 305 F.2d 221, 224–225 (9th Cir. 1962).

The Internal Revenue Service has, in an attempt to secure uniform ad-

---

4. Effective December 31, 1962, Public Law 87–834, § 4(b), substituted the clause "(including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances)" for the above-quoted clause "(including the entire amount expended for meals and lodging)." The difference between the clauses is not relevant in this case since it is conceded that the disputed expenditures were not "lavish or extravagant."

ministration of the Code, taken the position that employment will be considered "temporary" only if "both the anticipated and actual durations are for less than one year." Rev.Rul. 60–189, 1960–1 Cum. Bull. 60, 64. The Government here argues that since this "one-year rule" is a reasonable administrative interpretation of the statute and caselaw, the Court should adopt the one-year rule as a matter of law. Because the Court concludes that as a matter of fact and law Captain Egan's position as President of the Pilots Association was not "temporary", but was "indefinite" or "indeterminate", there is no reason to decide the permissible impact of the "one-year rule."

The undisputed facts in this case demonstrate that Captain Egan could, in May of 1958, anticipate a term of office in Philadelphia of *at least* one year. Beyond that was somewhat speculative, but the Captain could be sure that he had a good chance, a substantial chance, of re-election—indeed, a better chance than any other pilot in the Association since the present record indicates that the incumbent was always somewhat of a favorite. In any event, the actual extent of his term in office clearly vitiates the claim of temporariness; he remained in office six years, winning each election handily if not always comfortably. Under all of these circumstances and indulging the plaintiff with every reasonable inference—particularly the claimed fact that Captain Egan himself considered his stay in Philadelphia temporary —the Court concludes that the employment in Philadelphia cannot be considered "temporary" within the meaning of the statute. See, Jenkins v. Commissioner of Internal Revenue, 418 F.2d 1292, 1293 (8th Cir. 1969); Cockrell v. Commissioner of Internal Revenue, 321 F.2d 504, 507 (8th Cir. 1963); Berhow v. United States, 279 F.Supp. 737, 739 (D. Neb.1968).

■ Plaintiff argues that it is unreasonable to require the taxpayer to move from his home of many years in Lewes to Philadelphia when his employment there could possibly last as little as a year. The short answer to this point is that it would indeed be unreasonable for the government to require relocation under those circumstances, but this is not the effect of the interpretation of § 162 followed here. The taxpayer is perfectly free to relocate or not, but the United States Treasury need not partially support him if he chooses not to move.

It is this point which underlies a further ground for granting the government's present motion for summary judgment based on the leading case of Commissioner of Internal Revenue v. Flowers, 326 U.S. 465, 66 S.Ct. 250, 90 L.Ed. 203 (1946). There, in an analogous situation, the Court determined that a lawyer whose principal place of business was in Mobile, Alabama, but who insisted on continuing to live in Jackson, Mississippi, could not deduct the cost of travel, meals and lodging in Mobile. The Court stated:

> The added costs in issue, moreover, were as unnecessary and inappropriate to the development of the railroad's business as were his personal and living costs in Jackson. They were incurred solely as the result of the taxpayer's desire to maintain a home in Jackson while working in Mobile, a factor irrelevant to the maintenance and prosecution of the railroad's legal business. The railroad did not require him to travel on business from Jackson to Mobile or to maintain living quarters in both cities. Id. at 473, 66 S.Ct. at 254.

Quite similarly, in this case Captain Egan was not required by the Pilots Association to maintain two residences, and specifically was not required to maintain his residence in Lewes. His Lewes residence was of no benefit to the Pilots Association. The Court can readily understand his desire to retain his home in Lewes, but the *Flowers* case indicates that the expenses of the added residence

in Philadelphia cannot properly be considered to have been incurred "in pursuit of business" as § 162 of the Code requires.

The government's motion for summary judgment will be granted. Submit order in accordance herewith.