LEO and PATRICIA STELMASZEK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stelmaszek v. Commissioner
Docket No. 10391-76.
United States Tax Court
T.C. Memo 1978-187; 1978 Tax Ct. Memo LEXIS 330; 37 T.C.M. (CCH) 811; T.C.M. (RIA) 780187; May 22, 1978, Filed Leo Stelmaszek, pro se. Scott R. Cox, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in petitioners' Federal income tax for the calendar year 1974 in the amount of $717.42. The issue for decision is whether petitioner Leo Stelmaszek was away from home within the meaning of section 162(a)(2), I.R.C. 1954, [1] during the calendar year 1974 so as to be entitled to deduct traveling expenses for that year and, if so, the amount petitioner is entitled to deduct of the cost of returning on weekends to the place of abode of his wife and family. *331 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Skandia, Michigan at the time of the filing of their petition in this case filed a joint Federal income tax return for the calendar year 1974 with the Director, Internal Revenue, Midwest Service Center, Kansas City, Missouri. In 1973 Leo Stelmaszek (hereinafter petitioner) was a correctional officer at Camp Pugsley, a youthful offenders' correctional institution located in Kingsley, Michgan. At that time petitioner and his family lived in Fife Lake which was located near Camp Pugsley. In the latter part of 1973, petitioner was advised that Camp Pugsley was closing. He was given the option of either terminating his employment with the Department of Corrections or transferring to another facility. Petitioner sought to remain with the Department of Corrections. Camp Pugsley closed as of the end of December 1973, but petitioner remained on the payroll of that facility until mid-January 1974 when the Department of Corrections arranged a transfer for him to Marquette Branch Prison, Marquette, Michigan. When petitioner was transferred to Marquette *332 he resided on the third floor of the administration building of the prison and was charged rent as outlined in the State of Michigan Civil Service schedule covering employee maintenance. This arrangement continued for approximately 11 months. The cost to petitioner of his meals in Marquette was $8 a day. Petitioner did not seek other employment in the area of Kingsley, Michigan where Camp Pugsley was located at the time he was informed of the closing of the camp. His family remained in the home which petitioners owned in Fife Lake. At some time in 1974 this home was placed on the market for sale. It was sold in late November 1974. When the superintendent of Camp Pugsley advised petitioner and other employees of Camp Pugsley that the camp would be closing he gave no assurances to the employees as to what ultimate disposition would be made of the camp by the Department of Corrections. In announcing the closing, the director of the Department of Corrections stated that the camp was being closed because it was too costly an investment. At that time there were 30 inmates at Camp Pugsley which was operating at a cost of approximately $170,000 a year. Although petitioner was *333 not specifically so informed, some of the other employees at Camp Pugsley were informed that the facility was closing permanently. Petitioner was told by the camp superintendent that if the camp did reopen he would be given the opportunity to return to employment at Camp Pugsley. No time for such a possible reopening was suggested to petitioner.
On March 22, 1974, petitioner deposited earnest money for the purchase of 20 acres of land near Skandia, Michigan, which was 20 miles from Marquette Branch Prison. Petitioner completed the closing of the purchase of the land on April 24, 1974. In September 1974, petitioner started the construction of a house on this property which was occupied by his family on December 21, 1974. In January 1974 petitioner enrolled at the University of Marquette and continued classes until June of 1974, but did not take any courses the remainder of that calendar year. During 1974, petitioner was advised that Camp Pugsley would reopen and a position would be available for him. Petitioner decided not to return to Camp Pugsley. Camp Pugsley reopened in June 1975. On their joint Federal income tax return for the calendar year 1974, petitioners claimed a *334 deduction for travel expenses while away from home in the total amount of $1,760 which petitioner explained constituted meals and lodgings for 44 weeks at $8 per day, and automobile expense of $2,880. The automobile expense represented the cost on a mileage basis for petitioner driving between Marquette and Fife Lake and return on weekends.
Respondent, in his notice of deficiency, disallowed these claimed deductions with the explanation that the cost of meals and lodging had been disallowed as personal living expenses "since they were incurred at taxpayer's 'post of duty,'" and that the automobile expenses had been disallowed as personal expenses since they represent commuting to where his family lived on weekends. OPINION Section 162(a)(2) provides for the deduction by a taxpayer of traveling expenses while away from home in pursuit of a trade or business. In order to be entitled to this deduction a taxpayer must show that the expenses are reasonable and necessary, that they were incurred while "away from home," and that there is "direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer." Commissioner v. Flowers,326 U.S. 465, 470 (1946). *335 Here, certainly the expenses incurred by petitioner for meals at Marquette, Michigan were reasonable if petitioner meets the other criteria. However, petitioner must also show that he was "away from home" within the meaning of the statute and a direct connection between his expenditures and the carrying on of his trade or business as an employee of the Michigan Department of Corrections. Although in Commissioner v. Flowers,supra, the word "home" as used in the statute was not defined, the respondent has consistently taken the position that "home" as used in section 162(a)(2) and its predecessor provisions means the principal place of employment or post of duty of the taxpayer. This Court has approved this interpretation by respondent and held that unless a taxpayer's employment at his principal post of duty is temporary, his principal post of duty is his "home" within the meaning of the statute providing for deduction of traveling expenses when "away from home." See Friedman v. Commissioner,37 T.C. 539, 557 (1961); Carroll v. Commissioner,20 T.C. 382 (1953). This interpretation has been accepted in the decisions of a number *336 of the Circuit Courts of Appeal. See England v. United States,345 F.2d 414, 417 (7th Cir. 1965); Cockrell v. Commissioner,321 F.2d 504 (8th Cir. 1963), affirming 38 T.C. 470 (1962). The position of the Sixth Circuit, to which an appeal in this case would lie, in Burns v. Gray,287 F.2d 698 (6th Cir. 1961), appears to question the holding that the principal post of duty of a taxpayer is his home within the meaning of section 162(a)(2). However, in Commissioner v. Mooneyhan,404 F.2d 522 (6th Cir. 1968), reversing on another issue 47 T.C. 693 (1967), the Sixth Circuit apparently adopted the position taken by this Court and other courts, stating (at 528): But if the taxpayer is away "permanently", a term that presents no real problem, or "indefinitely", a term that does since it begs definition, his tax home shifts to his principal place of employment and he may not deduct his expenses. England v. United States, 345 F.2d 414 (7th Cir. 1965); Cockrell v. Commissioner of Internal Revenue, 321 F.2d 504 (8th Cir. 1963). This concept of tax home has received the *337 tacit approval of the Supreme Court. Commissioner of Internal Revenue v. Stidger, 386 U.S. 287, 87 S.Ct. 1065, 18 L.Ed.2d 53 (1967); United States v. Correll, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967). Although the Sixth Circuit now accepts the principal post of duty of a taxpayer as his tax home, as indicated from the quotation from Commissioner v. Mooneyhan,supra, the principal post of duty does not constitute the "home" of a taxpayer within the meaning of the statute if his employment at that post of duty is temporary. As succinctly stated by the Supreme Court in Peurifoy v. Commissioner,358 U.S. 59, 60 (1958): To this rule, however, the Tax Court has engrafted an exception which allows a deduction for expenditures of the type made in this case when the taxpayer's employment is "temporary" as contrasted with "indefinite" or "indeterminate." Compare Schurer v. Commissioner, 3 T.C. 544; Leach v. Commissioner, 12 T.C. 20; Albert v. Commissioner, 13 T.C. 129, with Warren v. Commissioner, 13 T.C. 205; Whitaker v. Commissioner, 24 T.C. 750. * *338 * * Accepting in this case the definition of "home" as a taxpayer's principal post of duty unless his work at that post is "temporary" as distinguished from "permanent" or "indefinite," we are presented with the purely factual issue of whether petitioner's position at Marquette, Michigan was temporary as distinguished from permanent or indefinite. Considering all the facts here, we conclude that from the time petitioner transferred from Camp Pugsley to Marquette his employment at Marquette was "permanent" or "indefinite" as distinguished from "temporary." Petitioner argues that his assignment was temporary since he had been told that he would be offered the opportunity to transfer back to Camp Pugsley if that camp reopened, and he was furnished quarters free of charge in the administration building of the prison which he would have been entitled to only on a temporary assignment. Respondent points out that at the time of petitioner's transfer there was no assurance when, if ever, Camp Pugsley would reopen and the indication was that it was being permanently closed. Respondent also points out that the position to which petitioner was transferred was not a temporary position *339 in the Department of Corrections of the State of Michigan. Respondent points to the actions taken by petitioner himself which indicate that petitioner considered his transfer to be either permanent or indefinite. While the record is not clear that petitioner was told Camp Pugsley was closing permanently, it is clear that he was given no assurance when, if ever, Camp Pugsley would reopen. He, in his own mind, concluded that at some juncture the camp might reopen because of the nature of the facilities, but even petitioner did not suggest that he had any thought as to when this reopening might occur. Some of the employees of the Department of Corrections were told by their superiors that Camp Pugsley was being permanently closed. Petitioner's own actions indicate that he did not consider the transfer to be temporary. Soon after his transfer to Marquette petitioner bought land close to the facility where he was employed and in September 1974 commenced the construction of a home on the property. Petitioner argues that the land was a good buy regardless of whether he did or did not remain at Marquette. However, this record gives the clear indication that petitioner bought the land *340 primarily as a place to build a home. Also, petitioner put his home near Camp Pugsley up for sale and apparently had not sold it prior to November merely because the offers he received were not in his view adequate. In our view, the record clearly shows that petitioner's employment at Marquette was not temporary. Petitioner, in support of his position, relies on Six v. United States,450 F.2d 66, 69 (2d Cir. 1971). In that case the Circuit Court concluded that "home" as used in the statute "means the taxpayer's permanent abode or residence rather than his business headquarters." This interpretation by the Second Circuit appears to be contrary to that adopted by the Sixth Circuit in Commissioner v. Mooneyhan,supra. However, even under the criteria laid down by the Second Circuit in Six v. United States,supra, petitioner has failed to show that his expenses in Marquette are properly deductible under section 162(a)(2). In that case the court pointed out that under the holding in Flowers v. Commissioner,supra, a taxpayer must show that the expenses were incurred in pursuit of a trade or business and that there *341 is a direct connection between the expenditures and the carrying on of the trade or business. The court then stated that the key inquiry to be made in determining whether these criteria are met is a determination of whether, under all the circumstances, the employment of the taxpayer during the year in issue "may be viewed as temporary in nature or as sufficiently indefinite to expect that a reasonable person in her position would pull up stakes and make her permanent residence" in the location where employed. The court went on to state that when an assignment is truly temporary it would be unreasonable to expect a taxpayer to move his home, but that -- when the assignment is "indefinite" or "indeterminate," the situation is different and, if the taxpayer decides to leave his home where it was, disallowance is appropriate, not because he has acquired a "tax home" in some lodging house or hotel at the worksite but because his failure to move his home was for his personal convenience and not compelled by business necessity. Rosenspan,supra 438 F.2d at 912. In our view petitioner in this case left his family in the home near Camp Pugsley for the greater part of 1974 not *342 because his employment at Marquette was temporary but because for personal reasons he preferred not to move his family until he received an offer for his home near Camp Pugsley which he considered adequate, and because he preferred to build his own home near Marquette rather than rent a home for his family or purchase a home which was already constructed. These reasons for maintaining his family in the home near Camp Pugsley are personal and not business. Since we have concluded that petitioner was not "away from home" within the meaning of Section 162(a)(2), we do not reach the question of what amount, if any, of the cost petitioner incurred in driving his car to the abode of his family near Camp Pugsley would be properly considered to be deductible traveling expenses. Respondent has conceded that if he is upheld on his position that petitioner's transfer to Marquette was permanent or indefinite and the deduction claimed by petitioner for meals, lodging and travel expenses are denied "an additional $200 will be allowed petitioner as an additional moving expense allowance, representing the cost of temporary quarters in Marquette, Michigan for 30 days." In view of this concession *343 by respondent, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩