Max C. Tietjen and Miriam S. Tietjen v. Commissioner.
Tietjen v. Commissioner
Docket No. 2992-69 SC.
United States Tax Court
T.C. Memo 1970-65; 1970 Tax Ct. Memo LEXIS 295; 29 T.C.M. (CCH) 281; T.C.M. (RIA) 70065; March 16, 1970, Filed. George F. Belyea, 816 Security Bank Bldg., Fresno, Calif., for thepetitioners. Richard D. Worsley, for the respondent. RAUM
Memorandum Findings of Fact and Opinion The Commissioner determined a $310.97 deficiency in petitioners' 1966 income tax. The sole matter for decision is whether petitioner Max C. Tietjen is entitled to deduct transportation expenses in the aggregate *296 amount of $2,025 incurred in driving his automobile daily from his home to his place of employment and return. The deduction is sought either as a business expense under section 162 of the 1954 Code or as a loss in a transaction entered into for profit under section 165. 282 Findings of Fact The parties have filed a stipulation of facts which is incorporated herein by this reference. Petitioners, husband and wife, filed their joint income tax return for 1966 with the district director of internal revenue at San Francisco, California. They resided in Fresno, California, not only at the time of filing their petition herein but also during the tax year and at all other times pertinent herein. Petitioner Max C. Tietjen (hereinafter sometimes referred to as petitioner) was employed as an "outside salesman" by the A.E. Lyon Company of Glendale, California ("Lyon"), from May of 1957 to May of 1966, selling wholesale plumbing supplies. His territory generally encompassed the San Joaquin Valley. For approximately the last seven years of his employment with Lyon he regularly made sales of plumbing supplies to Artcraft Industries of Turlock, California ("Artcraft"), an unincorporated *297 business owned by two persons named Charles Dayton and Glen D. Lamont. Artcraft was a small company engaged in the business of remodeling kitchens and bathrooms; it also made formica tops, cabinets, and synthetic marble and flooring. Turlock is located approximately 75 miles northwest of Fresno. Both "towns" are connected by U.S. Route 99. Fresno has a population of approximately 300,000 persons and Turlock a population of about 10,000 persons. Petitioner's salary at Lyon was about $510 a month; in addition the company paid the expenses for the use of a car which it furnished, and it also gave him a "small" expense account for entertaining. During the course of his work for Lyon petitioner became friendly with the owners of Artcraft, who from time to time suggested that he work for them. He was told or understood that their one outside salesman had a sort of profit sharing arrangement, whereby that salesman received about $900 or $1,000 annually in addition to his regular salary. Petitioner finally accepted the offer which the owners of Artcraft had orally made to him, and he commenced work for Artcraft on May 1, 1966. His average salary was about $550 a month. There was no agreement *298 or contract between petitioner and Artcraft that he would receive any interest in the business or that he would receive a so-called profit sharing arrangement similar to that enjoyed by Artcraft's sole outside salesman, but he hoped or anticipated that such would be the case and was led to believe by the owners of Artcraft that such might be the case. Petitioner's work at Artcraft was not that of an outside salesman. His duties were largely those of an "inside" man. Throughout the period that he worked for Artcraft petitioner traveled daily from his home in Fresno to Turlock and back again, a total distance of some 150 miles. He incurred expenses in 1966 in the total amount of $2,025 for such travel, computed on the basis of a mileage formula which the Commissioner does not contest. There were no instances in which he stayed over-night in Turlock. Petitioner acquired his present home in Fresno in 1955, and beginning in the fall of 1955 had started to make several additions to his home as a "do-it-yourself" project, adding a bedroom, bathroom, and a family room in addition to other improvements. At the time he was working for Artcraft the improvements had not yet been completed, *299 and in his judgment it would have been difficult to sell the property in its partially finished condition. After some seven and one-half months work at Artcraft petitioner reached the conclusion that he would not receive any profit sharing arrangement at Artcraft and he terminated his employment with that company on December 16, 1966. There had never been any definite promise in respect of a profit sharing arrangement, but at least one of the owners of Artcraft was of the opinion that, had petitioner stayed longer, he would have been "under" some such arrangement. Petitioner's employment with Artcraft was neither conditional nor temporary; it was firm in character and unlimited as to time; it was terminated only when petitioner chose that course of action at a time when he felt that his expectations as to a profit sharing arrangement were not being met. Subsequent to leaving Artcraft, petitioner was employed by the Friden Company in Fresno as an outside office machine salesman, beginning December 19, 1966, and is currently employed by the latter company. 282 In determining the deficiency herein, the Commissioner disallowed the $2,025 deduction claimed in respect of petitioner's *300 travel to and from Turlock, and also made a corresponding adjustment in allowable medical expenses which are not otherwise in dispute. Opinion RAUM, Judge: Petitioners seek to justify the deduction in question on either of two theories: (1) that the traveling expenses were incurred by the husband while "temporarily away from home" within the meaning of section 162(a)(2); or (2) that such expenses constituted "a loss incurred in a trade or business or transaction for profit within the purview of section 165(c)(1) or (2)." We think that neither theory is sound. 1. At the very outset it is plain that the "away from home" provisions of section 162(a)(2) are inapplicable for at least several reasons. Section 162(a)(2) provides: Sec. 162. Trade or Business Expenses. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expense paid or incurred during the taxable year in carrying on any trade or business, including - * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * * Paragraph *301 (a)(2) has no application here, if for no other reason, because the Supreme Court has held in United States v. Correll, 389 U.S. 299 that the "away from home" provisions relate only to so-called overnight trips or to travel requiring sleep or rest, and the record herein makes clear that petitioner never spent the night at Turlock, nor is there any suggestion that the travel in question required any "sleep or rest." Moreover, petitioner's employment at Turlock was of an indefinite rather than temporary character, and since it was his principal place of business it was his "tax home" within the meaning of section 162(a) (2). Cf. Rendell Owens, 50 T.C. 577, 580; Ronald D. Kroll, 49 T.C. 557, 561-562; and Floyd Garlok, 34 T.C. 611, 614. Accordingly, petitioner was not "away from home" within the meaning of paragraph (a)(2). Nor is petitioner entitled to the deduction under the introductory provisions of (a) as business expenses. Although it is of course proper to classify certain travel as business connected (as, for example, a one day business trip) so as to justify the deduction of actual transportation expenses (as distinguished *302 from the broader range of expenses deductible under (a)(2) in respect of travel "away from home"), the travel involved in the present case is simply that of daily commuting to the taxpayer's job. And the expenses incurred in connection with commuting have always been regarded as personal rather than business. Certainly, if Turlock had been only 5 miles, or 10 miles, or even 15 miles from Fresno, there would be no serious question that the daily commuting costs would be nothing more than nondeductible personal expenses. Is the situation different as a result of the 75 mile distance? We think that a negative answer is required by Commissioner v. Flowers, 326 U.S. 465. Cf. Barton v. Commissioner, 424 F. 2d 1295 (C.A. 7, February 26, 1970) (102 mile roundtrip). That petitioner continued to reside in Fresno was for personal reasons unrelated to his duties with Artcraft, and his travel expenses must be regarded as having been incurred for his personal convenience. See Carragan v. Commissioner, 197 F. 2d 246, 249 (C.A. 2): A nation of city-hoppers and suburbanites though we may be, the Supreme Court has steadfastly refused to say that traveling expenses *303 are incurred in the pursuit of business when they stem from the petitioner's refusal to bring his home close to his job. The job, not the taxpayer's pattern of living, must require the travel. Commissioner of I.R. v. Flowers, 326 U.S. 465. * * * See also Barnhill v. Commissioner, 148 F. 2d 913, 917 (C.A. 4): But it is not reasonable to suppose that Congress intended to allow as a business expense those outlays which are not caused by the exigencies of the business but by the action of the taxpayer in having his home, for his own convenience, at a distance from his business. Such expenditures are not essential to the prosecution of the business and were not within the contemplation of Congress which proceeded on the assumption that a business man would live within reasonable proximity to his business. * * * 2. Petitioners' contention that there was a section 165 loss requires but brief 284 comment. Unlike Harris W. Seed, 52 T.C. 880, relied upon by petitioners, the amounts involved in this case were not expenditures made for a capital asset which failed to materialize. Max C. Tietjen was not purchasing or otherwise acquiring any interest *304 in Artcraft, and the expenditures in question were simply the daily costs of commuting to his job for which he received periodic compensation. There was no "loss" whatever within the meaning of section 165. Decision will be entered for the respondent.