*Decision will be entered under Rule 50.*

ARTHUR C. PUCKETT, JR. AND DOROTHY W. PUCKETT, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2596–70.    Filed August 19, 1971.

*Arthur C. Puckett*, Jr., pro se.
*John B. Harper*, for the respondent.

SIMPSON, *Judge:* The respondent determined deficiencies in the income tax of the petitioners in the amount of $440 for 1966 and $487.70 for 1967. Many of the issues in this case have been settled or conceded; those remaining for decision are (1) whether a member of the National Guard, who is on temporary military duty, may deduct his expenses for transportation, meals, and lodging at his post of military duty, and (2) whether he may deduct his automobile expenses for trips required by his permanent employment while he is on such military duty.

---

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners, Arthur C. Puckett, Jr., and Dorothy W. Puckett, are husband and wife, who maintained their residence in LaVergne, Tenn., at the time of filing their petition in this case. They filed their joint 1966 and 1967 Federal income tax returns with the district director of internal revenue, Nashville, Tenn. Mr. Puckett will be referred to as the petitioner.

The petitioner was the postmaster of the United States Post Office at LaVergne, Tenn. In 1967, the post office had three full-time employees—the postmaster, a clerk, and a substitute clerk; there was no assistant postmaster or assistant to the postmaster. There were certain duties which could be performed only by the petitioner as the postmaster, including some that had to be performed every 2 weeks in connection with a pay period and others that had to be performed every 4 weeks with respect to accounting periods.

The petitioner was active in church affairs. He was a founder of the Miracle Baptist Church of LaVergne, and sometimes acted as assistant pastor of such church. He was also chairman of the executive committee, chairman of the building committee, Sunday school superintendent and teacher, and purchasing agent for the church.

The petitioner was also an officer in the Tennessee National Guard. In 1967, he requested a leave of absence from his postal duties for the purpose of attending the U.S. Army Reserve Officers Training School, Fort Knox, Ky. It was the policy of the Post Office Department to cooperate with the Department of Defense by allowing its personnel leave for the purpose of attending military training programs, and the petitioner was granted the requested leave with the understanding that the LaVergne Post Office would continue to render satisfactory service to the public during the period of his absence, and that during such period he would remain responsible at all times for such service. It was also understood that the petitioner would return to LaVergne each weekend to attend to postal matters.

The petitioner served on active duty from Monday, February 27, 1967, to Wednesday, August 2, 1967. During such period, he continued to teach Sunday school at the Miracle Baptist Church, but he was inactive with respect to the other positions he held in such church. Also during such period, the petitioner's wife, who had been employed since 1955 at the LaVergne Post Office as clerk, substitute clerk, and temporary substitute clerk, and who was the senior employee of such office, was employed there on a full-time basis. The petitioner considered her to be the most qualified of the LaVergne postal employees. In order to serve on active duty, the petitioner took 15 days of military

leave, 50 days of annual leave, and 50 days of leave without pay from his employment at the post office.

While on active duty, the petitioner received his basic pay, plus a subsistence allowance of $47.88 per month and the basic allowance for quarters (quarters allowance) of $130.05 per month. He received subsistence allowance payments in the aggregate of $263.34 and quarters allowance payments in the aggregate of $715.27 for the period February to August 1967. During such time, the petitioner lived while at Fort Knox in a Bachelor Officers' Quarters (BOQ) at a cost of 60 cents per day or an aggregate of $91.80. He ate his meals at an officers' club, a messhall, and at certain civilian restaurants.

In connection with his active duty, the petitioner remained at Fort Knox approximately 5½ days each week from Sunday night through Saturday noon. Each Saturday afternoon, the petitioner traveled to LaVergne, and he generally returned to Fort Knox on Sunday afternoon. The roundtrip distance between Fort Knox and LaVergne is approximately 380 miles. The Army paid the petitioner an allowance based upon mileage for travel expenses incurred in connection with his initial trip to Fort Knox and his final journey to LaVergne. The petitioner did not receive an allowance for the travel performed between LaVergne and Fort Knox each weekend while he was on active duty.

In his statutory notice of deficiency, the respondent determined that the petitioner realized a long-term capital gain during 1966 from the involuntary conversion of certain property which he failed to report on his 1966 return. On his 1967 return, the petitioner claimed deductions for certain expenses incurred "in lieu of per diem" in the amount of $1,738 while he was on active duty at Fort Knox. He claimed a deduction for certain officers' club dues and for certain real estate taxes. He also claimed a deduction for expenses incurred with respect to the attendance of himself and his wife at the Postmasters National Convention in San Juan, P.R. In his statutory notice of deficiency, the respondent disallowed the deduction claimed by the petitioner "in lieu of per diem," the officers' club dues, and real estate taxes. He also disallowed the deduction for convention expenses to the extent that such expenses were attributable to the attendance of the petitioner's wife at such convention.

OPINION

The parties have stipulated that the petitioners did not realize a long-term capital gain in 1966 from the involuntary conversion of property; accordingly, there is no deficiency with respect to the petitioners' 1966 Federal income tax. The parties have also stipulated that the petitioners are entitled to a deduction in the amount of $416.84 for expenses incurred with respect to the Postmasters National Con-

vention at San Juan, P.R., in 1967, and the petitioners apparently agree that they are not entitled to any larger deduction with respect to such expenses. The petitioners have failed to contest the respondent's disallowance of certain officers' club dues and certain real estate taxes claimed as deductions by them in 1967, and such disallowance must therefore be upheld. *Welch v. Helvering*, 290 U.S. 111 (1933).

There remains in dispute the petitioner's claimed deductions for his expenses while on active duty at Fort Knox. At the trial, the petitioner admitted that his deduction of $1,738 was computed on the basis that he was in military service for 158 days and that regular members of the Armed Forces received a per diem of $11 per day when they were in travel status. Although he now recognizes that he is not entitled to compute his deduction in such manner, he attempted to support his claimed deduction by presenting the following list of expenses:

| | | |
|---|---:|---:|
| Auto expenses—Fort Knox to LaVergne (21 roundtrips) | | $798.00 |
| Auto expenses—Fort Knox | | 198.00 |
| Books and supplies | | 72.29 |
| Laundry—uniforms | | 92.40 |
| Lodging—BOQ | | 91.80 |
| Meals ($6 per day ×132 days) | $792.00 | |
| Less subsistence allowance | 263.34 | 528.66 |
| Total | | 1,781.15 |

The respondent concedes the deductibility of $92.40 for laundering of uniforms. We have no information as to what the petitioner included in the $72.29 for books and supplies. On the return, he deducted certain amounts for books and supplies, and the respondent has not disallowed such deductions so that they are not in issue in this case. In any event, we cannot, in determining the correctness of the deficiency determined by the respondent, allow any deduction with respect to such item since we do not know what the petitioner intended to include therein. *Welch v. Helvering, supra.* It remains for us to decide whether the other items on the petitioner's list are deductible.

First, we consider the deductibility of the claimed expenditures for meals, lodging, and transportation at Fort Knox.

Section 162(a)(2) of the Internal Revenue Code of 1954 [1] provides:

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

\* \* \* \* \* \* \*

(2) traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; \* \* \*

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.

Section 274(d) provides, in part:

(d) SUBSTANTIATION REQUIRED.—No deduction shall be allowed—

(1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),

\*　　\*　　\*　　\*　　\*　　\*　　\*

unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense \* \* \*

Under such provision, a taxpayer who is traveling is required to keep certain records to substantiate his expenses in order to be entitled to deduct them. *William F. Sanford*, 50 T.C. 823, 829 (1968), affirmed per curiam 412 F. 2d 201 (C.A. 2, 1969), certiorari denied 396 U.S. 841 (1969). With respect to the expenses included within the purview of section 274(d)(1), approximations under the rule of *Cohan* v. *Commissioner*, 39 F. 2d 540 (C.A. 2, 1930), are not allowed. *William F. Sanford, supra* at 827, 828.

The petitioner testified that he estimated the total cost of his meals to be $6 per day. He stated that he spent approximately 50 cents per day on food for his refrigerator and usually spent about 50 cents per day for refreshments in the morning and afternoon on class days; that he never had breakfast in the messhall; that he usually had breakfast in the officers' club; that he sometimes ate meals other than breakfast in the messhall but frequently had them elsewhere; and that he considered $5 per day a very reasonable allowance to cover the cost of his meals. Although he claims to have kept records for his expenses during the first several weeks at Fort Knox, he did not offer his records into evidence and did not furnish any other evidence to support his claimed expenditures for meals, and he has not shown that records were not available to him or could not have been kept by him. Sec. 1.274–5(c)(4) and (5), Income Tax Regs. Manifestly, the requirements of section 274(d) have not been met with respect to the claimed deduction for meals, and accordingly, such item is not deductible.

The petitioner's testimony with respect to his expenditures for transportation while at Fort Knox was also vague and general. He testified that the BOQ which he occupied was 2.8 miles from the main gate, 2 miles from the officers' mess, 1.8 miles from the Post Exchange, 1.3 miles from his classroom building, and 1.8 miles from the base laundry. To compute his claimed deduction for mileage driven while at Fort Knox, he estimated the number of times he went to each of the buildings during a week's time, figured the amount of travel for 1 week, and then multiplied the resulting computation by the number

of weeks he was at Fort Knox. Obviously, his computation is based upon estimates, and there is no evidence of the mileage actually traveled by the petitioner while at Fort Knox. He offered no record of where he went or how often he went to the various places on and off the post, and he has not shown that such a record could not have been kept by him. Sec. 1.274–5(c)(4) and (5), Income Tax Regs. Under these circumstances, it is clear that he has failed to substantiate this item in the manner required by section 274(d). Sec. 1.274–5(c)(1), (2), and (3), Income Tax Regs.; *William F. Sanford, supra.*

The parties have stipulated as to the amount spent by the petitioner for lodging at Fort Knox, so that there is no issue as to the substantiation of such item. The petitioner's principal employment was as postmaster at LaVergne, and he expected to and did return to that position after completing his active military service at Fort Knox. At all times, his permanent home was in the LaVergne vicinity. His active military service constituted a secondary employment. Rev. Rul. 55–109, 1955–1 C.B. 261. His employment at Fort Knox was temporary since he expected to be there only about 5 months and was actually there for only a slightly longer period of time. *Emil J. Michaels,* 53 T.C. 269 (1969); *Laurence P. Dowd,* 37 T.C. 399 (1961). When a taxpayer is engaged in two different occupations at widely separated locations, expenditures for travel between such locations and for meals and lodging at the temporary place of employment may be deductible under section 162 if such travel is performed for business reasons. *Joseph H. Sherman, Jr.,* 16 T.C. 332 (1951); *Walter F. Brown,* 13 B.T.A. 832 (1928). In *Brown,* the taxpayer was engaged in the active practice of law in Toledo, Ohio, and he was appointed chairman of the Congressional Joint Committee on Reorganization of Executive Departments. In holding that his expenses for travel to and from Washington, D.C., and his expenses for meals and lodging while there, were deductible as ordinary and necessary business expenses, we said at pages 833–834:

This Board has recognized that a person may be regularly engaged in more than one trade or business at the same time. * * *

* * * It would probably make very little difference, if any, whether we consider the petitioner's home to have been in Toledo or in Washington. If the latter, he would have been compelled to travel to Toledo to carry on his law practice. Such expenses would be deductible. He was engaged, during the taxable year, in two occupations; * * *

In *Sherman,* we also said at page 337:

This Court has heretofore recognized that a taxpayer may have more than one occupation or business, and has held that where it is shown that the taxpayer has two occupations which require him to spend a substantial amount of time in each of two cities, he is entitled to the deduction of traveling and other ordinary

and necessary business expenses incurred in connection with attendance upon the one removed from his residence. * * *

From the record in this case, it is not clear as to whether the petitioner's military service at Fort Knox was required, or was in lieu of other required military service, or was voluntary; but in any event, he was employed by the Armed Forces at Fort Knox while he served there, regardless of why he undertook such service. *Walter F. Brown*, *supra*. Accordingly, the petitioner was away from home while at Fort Knox within the meaning of section 162(a)(2), and he is entitled to deduct any traveling expenses, including expenses for meals and lodging, which he incurred while there, which were not reimbursed, and with respect to which he met the substantiation requirements of section 274(d).

In fact, the respondent does not challenge the deductibility of unreimbursed expenses incurred by the petitioner for lodging while at Fort Knox. See Rev. Rul. 63-64, 1963-1 C.B. 30. However, the respondent contends that the petitioner was reimbursed for his expenses for lodging by the quarters allowance and that therefore he did not incur any deductible expenses for that purpose.

While the petitioner was in active military service, he was stationed at Fort Knox, and the quarters allowance received by him was to cover the expenses of lodging for him and his family during such military service. There is no showing that his expenses for lodging at Fort Knox, when added to the expenses of lodging for his family, exceeded the quarters allowance therefor.[2] This situation is quite different from that of a member of the Armed Forces on permanent duty who is temporarily required to serve away from his permanent duty station. Such a member of the Armed Forces receives a quarters allowance to cover lodging for him and his family at his permanent duty station and a per diem to cover his expenses of traveling. In this case, the petitioner was not traveling away from his permanent duty station— Fort Knox was his permanent and only duty station, and the quarters allowance was to reimburse him for his lodging expenses during such service, including his expenses at Fort Knox. Under these circumstances, we hold that the petitioner is not entitled to deduct such expenses.

Next, we turn to the deductibility of the costs of the weekend trips to LaVergne while the petitioner was stationed at Fort Knox. The respondent contends that such trips were made for personal and not for business reasons, and that the expenses of such travel are nondeductible

---

[2] We express no opinion as to the deductibility of the petitioner's expenses for lodging if it had been shown that the expenses of lodging him and his family exceeded the quarters allowance or as to how the quarters allowance might be allocated among such expenses.

personal expenses. Sec. 262. On the other hand, the petitioner contends that such trips were necessary to fulfill his responsibilities as postmaster of the LaVergne Post Office and that the expenses thereof were ordinary and necessary expenses of such employment.

The petitioner was granted a leave of absence from his duties as postmaster with the understanding that his post office would continue to provide satisfactory service to the public, and that at all times he would continue to be responsible for such service. It was also understood at the time that the petitioner would return to LaVergne each weekend in order to assist with any problems that might arise with respect to postal matters. While he was at Fort Knox, it was necessary for the petitioner to make telephone calls to LaVergne in connection with his duties as postmaster, and the costs of such calls have been allowed by the respondent as deductible business expenses. There was no assistant postmaster or assistant to the postmaster to perform the duties of the petitioner, and there were many duties which could not be performed by the other employees in the LaVergne Post Office. There were reports due every 2 weeks and every 4 weeks which had to be prepared by the petitioner. The respondent points out that the petitioner was heavily involved in the affairs of the Miracle Baptist Church in LaVergne; but while he was at Fort Knox, the petitioner's church activities were limited to teaching Sunday school. Based on the petitioner's testimony and the evidence submitted by him, we conclude that the petitioner's travel between Fort Knox and LaVergne on weekends was due to the exigencies of his business as postmaster. *Commissioner* v. *Flowers*, 326 U.S. 465 (1946) ; *Joseph H. Sherman, Jr.*, *supra; Walter F. Brown, supra.* Our decision in *Chandler* v. *Commissioner*, 226 F. 2d 467 (C.A. 1, 1955), reversing 23 T.C. 653 (1955), is not apposite, since the issue in that case was whether the taxpayer could deduct certain transportation expenses in addition to claiming the standard deduction under section 23(aa) of the Internal Revenue Code of 1939.

We hold that the petitioner has failed to prove that he is entitled to deduct his expenses incurred for transportation, meals, and lodging at Fort Knox. We also hold that the petitioner's unreimbursed expenses incurred for travel on weekends between Fort Knox and LaVergne while he was stationed at Fort Knox in 1967 are ordinary and necessary expenses of his occupation as postmaster.

Accordingly,

*Decision will be entered under Rule 50.*

Reviewed by the Court.

Bruce, *J.*, dissenting: I disagree with the opinion of the majority in two major respects.

*First.*—The majority has denied the petitioners a deduction for *lodging* expenses incurred by the petitioner Arthur C. Puckett, Jr., while attending a Reserve Officers Training School of the U.S. Army at Fort Knox, Ky., in 1967, on the ground that "the quarters allowance" received by him while attending the Reserve Officers Training School "was to reimburse him for his lodging expenses during such service." In my opinion, for the reasons hereinafter more fully discussed, the quarters allowance received by petitioner may not be used as an offset against his lodging expenses. I agree that petitioners are not entitled to the deduction claimed for lodging expenses, not for the reasons stated in the majority opinion, but on the ground that Fort Knox being petitioner's designated post of duty, such expenses were "personal, living" expenses which are not deductible under the provisions of section 262.

*Secondly.*—The majority has allowed the petitioners a deduction for automobile expenses incurred by the petitioner Arthur C. Puckett, Jr., in 1967, for weekend round trips between Fort Knox and La-Vergne, Tenn., on the ground that "the petitioner's travel between Fort Knox and LaVergne on weekends was due to the exigencies of his business as postmaster," and his expenses "ordinary and necessary expenses of his occupation as postmaster." I respectfully disagree. Petitioner's duties as postmaster did not require him to travel outside the area served by the LaVergne Post Office. He sought and was granted leave of absence in order that he might attend the Reserve Officers Training School at Fort Knox and "qualify for promotion" as a reserve officer, a business wholly unrelated to his employment as postmaster. His return to LaVergne on weekends was a personal problem and the expenses involved in connection therewith were not, in my opinion, "ordinary and necessary" expenses of his employment as postmaster, within the meaning of section 62(2) or section 162(a).

The statement of the issues contained in the majority opinion, in particular the second issue, assumes as a fact that the weekend round trips which petitioner made between Fort Knox and LaVergne were "required by" his employment as postmaster. As I shall hereinafter demonstrate, the performance of his duties as postmaster did not require any travel outside the area served by the LaVergne Post Office. Also, the military service in question was not with the Tennessee National Guard, as might be inferred from the statement of the first issue. I would restate the issues as follows: (1) Whether petitioners are entitled to deductions for the year 1967 for expenses, including expenses for meals, lodging, and automobile expenses, allegedly incurred

by the petitioner Arthur C. Puckett, Jr., while attending a Reserve Officers Training School of the U.S. Army at Fort Knox, Ky; (2) whether petitioners are entitled to a deduction for the year 1967 for automobile expenses incurred on weekend round trips between Fort Knox, Ky., and LaVergne, Tenn.; and (3) whether petitioners are entitled to a deduction for the year 1967, for expenses allegedly incurred for books and supplies during petitioner's attendance at the Reserve Officers Training School, in excess of the amount allowed by respondent.

The majority opinion also states, at page 1098: "From the record in this case, it is not clear as to whether the petitioner's military service at Fort Knox was required, or was in lieu of other required military service, or was voluntary." In my opinion, the record clearly reveals that petitioner sought the military service at Fort Knox, "to qualify for promotion" (Jt. Exh. 2-B), and that he made a trip to Fort Knox in 1966 "to see about enrolling in school in Feb. 1967" (Jt. Exh. 1-A). These facts are not mentioned in the majority opinion.

I would also add, contrary to the statements in the majority opinion at pages 1097 and 1098, that petitioner's military service did not constitute an employment. Rev. Rul. 55-109, 1955-1 C.B. 261, cited by the majority, held that members of reserve components of the Armed Forces attending training drills, etc. "are regarded as engaged in a trade or business."

As the trial judge who heard this case I reported and made findings of facts, including a preliminary statement of concessions made by the parties, as follows:

Respondent stipulated that petitioners did not realize a long-term capital gain of $4,000 during the year 1966, resulting from the involuntary conversion of property. Accordingly, there is no income tax deficiency for the year 1966. Respondent further stipulated that petitioners are entitled to a deduction in the amount of $416.84 for expenses incurred by petitioner in attending the Postmasters' National Convention at San Juan, P.R., in the year 1967. On brief, respondent conceded that petitioners are entitled to a deduction in the amount of $92.40 for laundry expenses incurred during petitioner's attendance at the Reserve Officers Training School at Fort Knox, Ky., in the year 1967. Petitioners have not contested respondent's determination that they are not entitled to a deduction for the year 1967 for Officers Club dues.

During the taxable years involved the petitioner was employed as the postmaster of the U.S. Post Office at LaVergne, Tenn. During 1967 the post office at LaVergne, Tenn., had three full-time employees. They were the postmaster, clerk, and substitute clerk.

Petitioner's wife was employed at the LaVergne, Tenn., Post Office as a temporary substitute clerk. This employment was on a part-time basis, except for the period of February 27, 1967, through August 2, 1967, when she was employed on a full-time basis. The LaVergne Post Office was the only first-class post office in the State of Tennessee without either an assistant postmaster or an assistant to the postmaster.

During 1967, petitioner was also an officer in the Tennessee National Guard. On Monday, February 27, 1967, in order "to qualify for promotion," petitioner entered temporary active duty with the U.S. Army at the Reserve Officers Training School, Fort Knox, Ky. He remained on active duty until Wednesday, August 2, 1967. Prior to going on temporary active duty, he contacted the Regional Office of the Post Office Department at Memphis and requested leave to attend the school. In furtherance of its policy of cooperating with Department of Defense military training programs, the Post Office Department granted petitioner leave, to go on active duty with the military, on the condition that the LaVergne Post Office render satisfactory service during the period of his absence. This would include service to the public, financial responsibility, reports, etc.

There are certain duties a postmaster must perform. A few occur by pay periods (every 2 weeks) and other major ones by accounting periods (every two pay periods). At the time petitioner was granted leave to attend the Reserve Officers Training School it was understood that he would return home each weekend to see that service at the LaVergne Post Office was maintained and problems resolved.

During petitioner's active duty he took 15 days of military leave, 50 days of annual leave, and 50 days of leave without pay; from his employment at the post office. On their income tax return for 1967, petitioners claimed and were allowed a deduction in the amount of $28.45 for telephone calls from Fort Knox to LaVergne by petitioner to his wife to discuss postal affairs.

During petitioner's active duty, he stayed at a bachelor officers quarters (BOQ) at Fort Knox, Ky., at a cost of 60 cents per day, or a total cost of $91.80, for the entire period. During this time petitioner ate his meals at the officers club, the messhall, and at unidentified restaurants off the military post.

Petitioner kept a record of his expenses while on active duty for 3½ weeks and found that they were running $11 or so daily. He also kept a record of the mileage driven on the post for the same period. However, rather than continuing to keep such records, because of his busy schedule and because his expenses had been running around $11 per day when he kept those records, he used this as a reasonable figure for his

daily expenses throughout the entire period of active duty. In addition, he estimated the mileage driven on the post to be 90 miles per week. Petitioner's estimate for mileage driven on the post is based on the distances from the various buildings on the post to his BOQ. Thus, he was 2.8 miles from the main gate, 2 miles from officers mess, 1.8 miles from the main Post Exchange, 1.3 miles from his classroom building, 1.8 miles from the laundry, etc. He estimated the number of times he would go to each of these buildings during a week's time and projected this over the entire period. Petitioner introduced no records of any expenses he incurred for which the $11 per day was claimed, nor any records to show the mileage driven in his car at Fort Knox during the period of active duty.

During petitioner's active duty, he remained at Fort Knox, Ky., approximately 5½ days each week or from Sunday night through Saturday noon. Each Saturday afternoon the taxpayer returned to LaVergne, Tenn. He generally returned to Fort Knox on Sunday afternoon. The round trip distance between LaVergne, Tenn., and Fort Knox, Ky., is approximately 380 miles. The Army paid petitioner a travel allowance (based on mileage) for his travel expenses incurred between LaVergne, Tenn., and Fort Knox, Ky., and Fort Knox to LaVergne at the beginning and end of petitioner's period of active duty. It did not pay petitioner any travel allowances for his weekend round trips in the interim.

In addition to the basic Army salary received during the period of active duty, petitioner received from the Army a subsistence allowance of $47.88 per month and a quarters allowance of $130.05 per month, or a total for the period of active duty of $263.34 for subsistence and $715.27 for quarters. Petitioner offset his expenses for meals on the post by the amount of subsistence allowance received. He did not offset his lodging expense by the amount of quarters allowance received.

During the years in question petitioner was active in church affairs. He was one of the founders of the Miracle Baptist Church of La-Vergne, Tenn. Although not officially designated as such, he acted as assistant pastor of the church during the greater part of the years involved. Petitioner was also chairman of the executive committee, chairman of the building committee, Sunday school superintendent, teacher, and purchasing agent for the church. When petitioner went on temporary active duty, however, he relinquished all of these positions, with the exception of teaching the Sunday school class.

On his income tax return for the year 1967, petitioner deducted $1,738 for expenses which were described on the return as being "in

lieu of per diem." The amount of $1,738 was computed on the basis of $11 per day for 158 days.[1]

The principal issues presented concern the deductibility of various expenses, including automobile expenses, meals, and lodging incurred on the post, and automobile expenses incurred on weekend trips between Fort Knox and LaVergne. A minor issue involves the deductibility of the cost of books and supplies purchased by petitioner for use in connection with his military training at Fort Knox.

The first issue involves automobile expenses and expenses for meals and lodging allegedly incurred by petitioner while at Fort Knox.

Respondent disallowed the claimed automobile and meals expenses for want of substantiation as required by section 274(d) of the Internal Revenue Code of 1954, as amended. The majority sustained respondent's disallowance of these two items, and I agree.

With respect to the lodging expenses, it was stipulated that petitioner stayed in a Bachelor Officers' Quarters (BOQ) for which he paid 60 cents per day, or a total of $91.80 for the entire period of active duty. Accordingly there is no question of substantiation of this expense. Respondent contends, however, that such expenses are to be "offset" by the quarters allowance which petitioner received from the Army during his tour of active duty. Petitioner contends that the allowance was paid him for the benefit of his family, who were not allowed to accompany him to Fort Knox, and, therefore, that he should not be required to offset the quarters allowance against his lodging expenses. Since petitioner's quarters allowance was in excess of his lodging expenses, adoption of respondent's contention would require the denial of the deduction claimed by petitioner.

In support of his contention, respondent argues that "If petitioner were allowed to deduct the cost of his lodging at Fort Knox without offsetting that cost by the quarters allowance he received, petitioner would obtain the double tax benefit of receiving a tax-free allowance, regs. 1.61-2(b), to pay the cost of his housing at his permanent residence (and permanent place of employment) and a deduction for the cost of his lodging at his temporary place of employment." He further argues that "In any event, the quarters allowance was received in

---

[1] At the trial and on brief petitioner represented his deductible expenses arising out of or in connection with his military duty to be as follows:

| | | |
|---|---:|---:|
| Auto expenses—Fort Knox to LaVergne (21 round trips) | | $798.00 |
| Auto expenses, Fort Knox | | 198.00 |
| Books and Supplies | | 72.29 |
| Laundry (uniforms) (not in dispute) | | 92.40 |
| Lodging (BOQ) | | 91.80 |
| Meals ($6 per day×132 days) | $792.00 | |
| Less subsistence allowance | 263.34 | 528.66 |
| Total | | 1,781.15 |

connection with his temporary employment, active duty with the Army, and should be used to offset the costs of lodging incurred in connection with that employment," citing Rev. Rul. 63–64, 1963–1 C.B. 30.

I agree with respondent, and the majority, that petitioner is not entitled to deduct the lodging expenses incurred by him while on active duty at Fort Knox, but do not agree that this result is to be determined by *offsetting* the quarters allowance against the lodging expenses.

In my opinion, the lodging expenses in question (as well as the expenses for meals and automobile expenses previously discussed) were "personal, living" expenses, not trade or business expenses within the meaning of section 162, and are therefore not deductible under the provisions of section 262.[2]

The basic allowances for subsistence and quarters are provided for in title 37 of the United States Code.[3] Generally, it is provided that each member of a uniformed service who is entitled to basic pay is entitled to a basic allowance for subsistence and for quarters, depending on rank and length of service. Members of the National Guard are included in this group.[4] Section 1.61–2(b) of the Income Tax Regulations[5] specifically provides that such allowances are to be excluded from gross income.

Rev. Rul. 55–572, 1955–2 C.B. 45, involved the tax status of the *per diem* allowances received by members of the uniformed services of the United States traveling on official business or temporary assignment away from their permanent post of duty, and also the question whether in computing allowable deductions for Federal income tax purposes, the *basic subsistence* and *quarters allowances* received by such members should be offset against expenses of transportation, meals, and lodging incurred by them in such travel status.

It was held that the *per diem* allowances are includable in gross income. It was further held that the expenses of transportation, meals

---

[2] SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES.

Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living or family expenses.

[3] 37 U.S. Code secs. 402 and 403.

[4] 37 U.S. Code sec. 204.

[5] Sec. 1.61–2 Compensation for services, including fees, commissions, and similar items.

(b) *Members of the Armed Forces, Coast and Geodetic Survey, and Public Health Service.* Subsistence and uniform allowances granted commissioned officers, chief warrant officers, warrant officers, and enlisted personnel of the Armed Forces, Coast and Geodetic Survey, and Public Health Service of the United States, and amounts received by them as commutation of quarters, are to be excluded from gross income.

* * *

However, the per diem allowance in lieu of subsistence and the mileage allowance received by such persons while in a travel status or on temporary duty away from their permanent stations shall be included in their gross income.

and lodging incurred by such members while in travel status, for Federal income tax purposes, should not be offset by their *basic subsistence* and *quarters allowances* in computing the amount of such expenses which are deductible under the provisions of sections 162(a)(2) and 62(2). The language of Rev. Rul. 55–572 is as follows:

.The basic allowances for subsistence and quarters are granted by law independently of whether the member is required to travel and are entirely unrelated to expenses incurred in travel. In other words, the expenses incurred for travel, meals and lodging are not allocable to the basic allowances for subsistence and quarters and have no relation to the member's statutory right to receive these basic allowances. Such members receive these basic allowances whether they are in travel status or not and the allowances are not considered as reimbursement for additional expenses incurred by reason of such travel. There appears to be no authority, therefore, for requiring members of the uniformed services 'to reduce their deductible travel expenses by the amount of such allowances in computing deductions for Federal income tax purposes.

In view of the foregoing, it is held that the per diem allowance in lieu of subsistence and the mileage allowance received by members of the uniformed services of 'the United States while in a travel status or on temporary duty away from their permanent stations are includible in the gross income of such members. Travel expenses incurred by such members which are deductible under the provisions of sections 162(a)(2) and 62(2) of the Internal Revenue Code of 1954 may be deducted in full without the necessity of offsetting the amount of basic subsistence and quarters allowances received against such expenses. As indicated, this Revenue Ruling in no way disturbs the long established nontaxable status of the basic subsistence and quarters allowances received by the members.

See also *Commissioner* v. *Stidger*, 386 U.S. 287 (1967), and *Bercaw* v. *Commissioner*, 165 F. 2d 521 (C.A. 4, 1948).

Rev. Rul. 63–64, 1963–1 C.B. 30, relied upon by respondent and apparently approved by the majority, involved the deductibility, for Federal income tax purposes, of expenses for travel, meals, and lodging, paid or incurred by a member of a Reserve component of the Armed Forces serving on temporary active duty under Pub. L. 87–117, Aug. 1, 1961, 10 U.S.C. sec. 263, and also whether the expenditures for meals and lodging, if otherwise deductible, were deductible in full or only to the extent that they exceeded the member's basic subsistence and quarters allowances. It was held that such a member serving on temporary active duty pursuant to Pub. L. 87–117, *supra*, and who has a principal or regular place of business or employment which he has not abandoned and to which he will return after his period of service, is in a "travel status" while performing such temporary duty. It was further held that such a member is entitled to a deduction for expenses incurred for meals and lodging at his official military post of duty "to the extent that such expenses exceed any nontaxable basic subsistence and quarters allowances received for those expenses."

Rev. Rul. 63–64 held that Rev. Rul. 55–572 is distinguishable notwithstanding the statement therein that the basic allowances for subsistence and quarters are granted by law independently of whether the member is required to travel and are entirely unrelated to expenses incurred in travel; that the expenses incurred for travel, meals, and lodging are not allocable to the basic allowances for subsistence and quarters and that such allowances are not considered as reimbursement for additional expenses incurred by reason of such travel. The reasons for its holding Rev. Rul. 55–572 distinguishable are stated in Rev. Rul. 63–64, as follows:

However, Revenue Ruling 55–572 deals with a member's travel status in connection with his military duties while away from his *permanent* military post of duty. In the instant case, the reservist's basic allowances are *not* received to cover traveling expenses connected with his military duties. They are received in connection with performing his duties at his principal military post of duty. Therefore, his expenses for meals and lodging there are allocable to his basic subsistence and quarters allowances to the extent that allowances are received for such expenses.

Section 265 of the Code, with the exceptions not here material, prohibits the deduction of an amount allocable to exempt income.

Since the basic subsistence and quarters allowances are exempt income, to allow a member of the Ready Reserve to exclude those allowances and to also allow a deduction for the expenses for which the allowances are received, would result in a double tax benefit in violation of section 265 of the Code.

In my opinion the distinction drawn is not tenable. Both those in the permanent military service and reservists, while on active military duty, receive the basic allowances for subsistence and quarters as a matter of law, and in both instances such allowances are excluded from gross income.[6]

To allocate to or offset deductible travel expenses by the nontaxable basic allowances for subsistence and quarters would in effect be imposing a tax burden on such allowances. In this respect I consider Rev. Rul. 63–64 invalid and not controlling in the present case. Accordingly, I would hold that respondent erred in his determination that petitioner's lodging expenses are to be offset by his basic allowances for subsistence and quarters.

The question remains, however, whether petitioner's lodging expenses are *otherwise deductible.* This depends upon whether he was in a "travel status" while performing the tour of active military duty at Fort Knox. In my opinion he was not and the lodging expenses were a part of his "personal, living" expenses which are not deductible under the provisions of section 262.

The facts of the present case differ from those involved in Rev. Rul. 63–64. There a member of the Ready Reserve was called to active duty

---

[6] See fns. 3, 4, and 5 *supra.*

pursuant to the provisions of Pub. L. 87–117, which empowers the President to order members of the Ready Reserve to active duty. His service was under official orders and he had no choice in the matter. In the present case, petitioner was not required to engage in a tour of duty under the provisions of Pub. L. 87–117 or any similar statute. Rather, he chose to engage in a tour of duty at the Reserve Officers Training School at Fort Knox in order that he might "qualify for promotion." Fort Knox was his designated post of duty and he was not in "travel status" while there. Petitioner's lodging expenses while at Fort Knox were "personal, living" expenses and he is not entitled to a deduction for such expenses. Section 262. Cf. *Commissioner* v. *Stidger*, *supra; Bercaw* v. *Commissioner*, *supra*.

The fact that petitioner was reimbursed for one round trip between his home in LaVergne and Fort Knox does not require a different conclusion. Section 402(a) (2) and (3), 37 U.S. Code, authorized payment of transportation expenses from his home to his first duty station and from his last duty station to his home.

Pointing to the fact that petitioner's principal employment was as postmaster at LaVergne, to which he expected to, and did return after completing his military service at Fort Knox, the majority held that petitioner was "away from home" while at Fort Knox within the meaning of section 162(a)(2), and entitled to deduct traveling expenses, including expenses for meals and lodging incurred while there, which were not reimbursed.

As authority for this holding the majority cites *Joseph H. Sherman, Jr.*, 16 T.C. 332 (1951), and *Walter F. Brown*, 13 B.T.A. 832 (1928),

In *Brown*, the taxpayer was engaged in the active practice of law in Toledo, Ohio, and was appointed Chairman of the Congressional Joint Committee on Reorganization of Executive Departments. He spent about 2 weeks of every month from May to December 1921 in Washington, where the work of the committee was done. It was held that the taxpayer's expenses for travel to and from Washington, and for his meals and lodging while there were deductible from his gross income as "ordinary and necessary expenses incurred" in carrying on a trade or business. Since the taxpayer was only required to be in Washington for approximately 2 weeks out of each month, his travel to and from Washington was not only related to, but was a necessary part of the performance of his duties as chairman of the committee. The result might have been different had his services as chairman required his presence in Washington during all of the period from May to December. Cf. *George W. Lindsay*, 34 B.T.A. 840 (1936); *S.M.R. O'Hara*, 6 T.C. 841 (1946). See also *Leon Falk, Jr.*, 15 T.C. 49, 57 (1950); *Ney* v. *United States*, 77 F. Supp 1005 (1948), affd. 171 F. 2d 449 (C.A. 8, 1948), certiorari denied 336 U.S. 967.

In *Joseph H. Sherman, supra*, the taxpayer owned a home and lived with his family in Worchester, Mass. For several years, including the taxable year 1945, he had been employed by a company engaged in the manufacture of plastic products as production manager and purchasing agent. In 1945, while still so employed, he formed and operated, as sole proprietor, a sales company in New York City, which handled approximately 80 percent of the production of the plastics company. He maintained a mailing address in New York where he picked up letters from customers, but had no office and no employees there. It was his practice to call on those from whom he had received letters and all sales were due entirely to his personal efforts. While in New York he stayed at a hotel. The opinion does not disclose where he kept his files, conducted his correspondence, or arranged for the supplying of the products which he sold by the plastic company.

This Court held that the taxpayer's "home" was Worchester and that his New York "traveling expenses (including the entire amount expended for meals and lodging)" were deductible. In connection therewith and in distinction of *Commissioner* v. *Flowers*, 326 U.S. 465, where the taxpayer's residence was in a place other than where he was engaged in a trade or business, the Court stated:

This Court has heretofore recognized that a taxpayer may have more than one occupation or business, and has held that where it is shown that the taxpayer has two occupations which require him to spend a substantial amount of time in each of two cities, he is entitled to the deduction of traveling and other ordinary and necessary business expenses incurred in connection with attendance upon the one removed from his residence.

Five Judges of the Court dissented.

The last of three conditions set forth by the Supreme Court in *Commissioner* v. *Flowers, supra*, was as follows:

(3) The expense must be incurred in pursuit of business. This means that there must be a direct connection between the expenditure and the carrying on of the trade or business of the taxpayer or of his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade.

In a dissenting opinion in the *Sherman* case, four of the judges expressed the view that under the concept of a "business home" prescribed by the Supreme Court in *Commissioner* v. *Flowers, supra*, "there should be allowed only business expenses at such place or in pursuance of business in connection with that place."

Insofar as the *Sherman* case holds that where a taxpayer has two occupations which require him to spend a substantial amount of time in each of two cities, he is entitled to the deduction of traveling expenses, including the amount expended for meals and lodging, incurred in connection with his attendance in the city removed from his resi-

**1110**

dence, I respectfully disagree and would not follow the *Sherman* case in the present proceeding.

In my opinion, where, as here, a taxpayer travels between two places in which he is engaged in separate unrelated employments or businesses, neither of which requires that he travel in connection with the performance of the duties of such employment or business, the question of being "away from home" is not crucial. This, in substance, was the holding of this Court in *Douglas A. Chandler*, 23 T.C. 653 (1955).[7] See 1 Mertens, Law of Federal Income Taxation, sec. 2.08, p. 34, (1969 rev.). In my opinion, the rationale of this Court's decision in the *Chandler* case is applicable here.

The second issue involves the deductibility of automobile expenses incurred by petitioner on weekend round trips between Fort Knox, Ky., and LaVergne, Tenn.

The determination of this issue depends upon whether the expenses in question were ordinary and necessary expenses incurred in carrying on any trade or business as provided by section 162(a), or in connection with the performance of services as an employee as provided by section 62(2) (B) or (C).[8]

Petitioner's position is that the weekly trips were directly related to the performance of his duties and responsibilities as postmaster of the U.S. Post Office at LaVergne and are therefore deductible.

Respondent's position is that the deductions claimed should not be allowed because "it has not been established that the weekend trips were made in the pursuit of petitioner's trade or business, his employment as postmaster of the LaVergne Post Office." Specifically respondent contends that petitioner's church activities, in particular the fact that he taught a Sunday school class each Sunday morning indicates that his primary purpose in returning to LaVergne each weekend was personal. I agree with the majority that there is no merit in the latter argument. The fact that petitioner attended church and

---

[7] The *Chandler* case was reversed by the U.S. Court of Appeals for the First Circuit, 226 F. 2d 467 (1955). However, the First Circuit in *Commissioner* v. *Bagley*, 374 F. 2d 204 (1967), certiorari denied 389 U.S. 1046 (1968), in fn. 11, subsequently held that its decision in the *Chandler* case, in which it had followed the *Sherman* case, was "incorrect as a guide to the construction of section 162(a) (2)."

[8] SEC. 62. ADJUSTED GROSS INCOME DEFINED.

For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions:

\* \* \* \* \* \* \*

(2) TRADE AND BUSINESS DEDUCTIONS OF EMPLOYEES.—

\* \* \* \* \* \* \*

(B) EXPENSES FOR TRAVEL AWAY FROM HOME.—The deductions allowed by part VI (sec. 161 and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

(C) TRANSPORTATION EXPENSES.—The deductions allowed by part VI (sec. 161 and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee.

taught a Sunday school class while at home is not sufficient to establish that this was the primary purpose for his returning to LaVergne each weekend.

It does not follow, however, that the expenses incurred in making such weekly trips were *ordinary and necessary* expenses incurred in carrying on a trade or business or in connection with the performance by him of services as an employee, as provided by section 62(2) (B) and (C), and section 162(a) referred to therein.

As postmaster at LaVergne, petitioner was an employee of the U.S. Post Office Department. Cf. *J. Rene Harris*, 22 T.C. 1118 (1954). There has been no showing that the performance of his duties as postmaster required him to travel outside the area served by the LaVergne post office and it may reasonably be assumed that there were no such requirements. His absence from LaVergne was a matter of his own choice. The fact that while on leave he attended a Reserve Officers Training School does not make the situation any different from what it would have been had he merely been on vacation. As was stated in the concurring opinion in *S.M.R. O'Hara*, *supra:* "making one's self available for work in the place where it is normally conducted on a permanent basis is the personal problem of the worker, and expenses to accomplish that purpose are not made in the pursuit of business within section 23(a) (1) (A). Until that is done, the worker has not reported for duty and is pursuing the place of business rather than the business." I would hold that the expenses in question were not ordinary and necessary expenses incurred in carrying on a trade or business or in the performance by him of services as an employee and, accordingly, are not deductible. *Commissioner* v. *Flowers, supra.*

The last issue involves the deductibility of $72.29 allegedly incurred by petitioner for books and supplies used by him in connection with the Reserve Officers Training School at Fort Knox. Respondent's position is that the deduction therefor is not allowable for the reason that "it has not been established that the amount claimed was actually expended." At the trial petitioner testified: "I have some receipts showing that I bought $72.29 worth of books and supplies from the book store." None of the receipts mentioned were offered in evidence.

The substantiation requirements of section 274(d) are not applicable to the type of expenditures here involved and, since respondent did not object to petitioner's testimony and did not cross-examine him as to such expenditures, petitioner's testimony might normally be accepted as sufficient evidence of the expenditures. *Arthur N. Blum*, 11 T.C. 101, 110 (1948), affd. 183 F. 2d 281 (C.A. 3, 1950). Under the circumstances of this case, however, I think something more

was required of petitioner. On their return for 1967, petitioners claimed deductions for books and supplies totaling $31.67, as follows:

Pointer for class _____ $1.50
Book Store Fort Knox for school supplies (I have receipts) __ 16.72
Attache case to carry books and materials to class _____ 13.45

Deductions for these items were allowed by respondent. Since petitioner offered no evidence as to the other items included in the $72.29 claimed, I agree that he has not sustained his burden with respect to this issue.