Jon Erdman and Donna Erdman v. Commissioner.
Erdman v. Commissioner
Docket Nos. 880-70 SC.[1]
United States Tax Court
T.C. Memo 1972-22; 1972 Tax Ct. Memo LEXIS 230; 31 T.C.M. (CCH) 65; T.C.M. (RIA) 72022; January 31, 1972, Filed Wallace J. Wolf, Jr., 45 Exchange, Rochester, N.Y., for the petitioners. John E. White, for the respondent. 66 INGOLIA
Memorandum Findings of Fact and Opinion INGOLIA, Commissioner: Respondent determined deficiencies in petitioners' Federal income tax for the taxable years 1967 and 1968 in the respective amounts of $863.24 and $759.97. The issues for decision are as follows: (1) Whether the petitioners are entitled to deduct per diem allowances from their gross income under section 62(2)(B)[2] in the years 1967 and 1968; (2) Whether the petitioners suffered a casualty loss of $650 in 1967; and (3) Whether the petitioners are entitled to deduct sales taxes and interest totalling $214.76 in 1968. *232 Findings of Fact The petitioners, Jon and Donna Erdman, are husband and wife. At the time the petitions in this case were filed, the petitioners' legal residence was at 64 Broderick Street, Rochester, New York. They filed their joint Federal income tax return for each of the taxable years 1967 and 1968 with the District Director of Internal Revenue at Buffalo, New York. Issue 1. Per Diem Allowance - Away From Home Expenses Jon Erdman (hereinafter referred to as petitioner) moved from Chicago, Illinois, to Rochester, New York, with his parents in 1961. In 1962, Jon graduated from Irondequoit High School and went to work as a draftsman for the Rochester Telephone Company where he was employed for approximately 14 months. Then he was employed as a draftsman by the Controls Division of American Standard, Inc., for about 6 months; by Dollinger Filter Company at Rochester for about 9 months; and by All States Design, Inc., until August of 1965 when he became associated with Lehigh Design Company, Inc. In August of 1965, Lehigh sent Jon to work at the Raytheon Company in North Dighton, Massachusetts. He left Irondequoit and went to live in Massachusetts. On March 14, 1966, he was *233 sent to the Raytheon Company in Portsmouth, Rhode Island, where he worked until June 10, 1966. He then left Lehigh and was immediately hired as a draftsman by Consultants and Designers, Inc. He was told he would work in Rochester and that the job would last about a year. He signed a new contract every 3 or 4 months. From June 10, 1966, until March of 1969, when he left Consultants, Jon worked and resided in the Rochester, New York, area. On September 13, 1966, he married. At that time, he went to stay with his maternal grandparents in Baltimore, Maryland, for about 10 days. He then took his wife to Rochester to live. While living in Rochester, the petitioner registered his car there, paid state taxes to the State of New York, registered for the draft in New York, and retained a bank account in Rochester. He rented living quarters during 1966, 1967, and 1968, initially signing a lease for a 1-year term. After he left Consultants in March of 1969, the petitioner remained in the Rochester area and currently works for the Xerox Corporation there. During his employment with Consultants, the petitioner received a per diem allowance of $11.20 ($1.40 per hour for an 8-hour day). The allowance *234 was paid only if he worked. In 1967, the petitioner received a per diem allowance of $2,648 and in 1968 it totalled $2,497.60. Issue 2. Casualty Loss In 1966, the petitioner allowed a friend to drive his car - a 1965 Jetstar Oldsmobile. There was a serious accident in which the car was totally demolished. The petitioner was insured with $100 deductible and his insurance company offered him $1,550 to settle the matter, which amount he accepted in 1966. At that time, the petitioner still owed $750 to the bank on the car. In 1967, the bank made a personal loan to the petitioner which he used to pay the amount still owed on the car. Issue 3. Sales Tax and Interest The petitioner offered no testimony or other evidence regarding the claimed sales tax and interest deduction. Opinion Issue 1. Per Diem Allowance - Away From Home Expenses Under section 61(a)(1)[3] per diem allowances paid to an employee are includable 67 in gross income. Leo C. Cockrell, 38 T.C. 470 (1962), affirmed 321 F. 2d 504 (C.A. 8, 1963); Darrell Spear Courtney, 32 T.C. 334 (1959); *235 Charles H. Hyslope, 21 T.C. 131 (1953); William B. Turner, 56 T.C. 27 (1971), on appeal to the Second Circuit 9-10-71. Section 62(2)(B)[4] allows a taxpayer to deduct expenses for travel "away from home" from gross income and section 62(2)(C)[5] allows a similar deduction for transportation expenses paid or incurred by the taxpayer in connection with the performance by him of services as an employee. *236 With respect to section 62(2)(B), the related section 162(a)(2)[6] and the deductibility of travel expenses, the Supreme Court in Commissioner v. Flowers, 326 U.S. 465 (1946), enumerated three conditions which must be satisfied before travel expenses may be deducted. They are: (1) The expense must be a reasonable and necessary traveling expense, as that term is generally understood. This includes such items as transportation fares and food and lodging expenses incurred while traveling. (2) The expenses must be incurred "while away from home." (3) The expenses must be incurred in pursuit of business. This means that there must be a connection between the expenditure and the carrying on of the trade or business of the taxpayer or his employer. Moreover, such an expenditure must be necessary or appropriate to the development and pursuit of the business or trade. As to the second condition and what is meant by the taxpayer's "home", many courts, including the Tax Court, have held that the word "home" means place of business or employment. Emil J. Michaels, 53 T.C. 269 (1969); *237 Rendell Owens, 50 T.C. 577 (1968); Ronald Kroll, 49 T.C. 557 (1968); Floyd Garlock, 34 T.C. 611 (1960); Commissioner v. Stidger, 386 U.S. 287 (1967). The Second Circuit had previously taken this view. O'Toole v. Commissioner, 243 F. 2d 302 (C.A. 2, 1957); Coburn v. Commissioner, 138 F. 2d 763 (C.A. 2, 1943). However, in the recent case of Rosenspan v. United States, 438 F. 2d 905 (C.A. 2, 1971) the Second Circuit defined "home" as meaning the taxpayer's residence. In Six v. United States, 322 F. Supp. 547 (C.A. 2, 1971), it reiterated its position. Since Rosenspan and Six are squarely in point and an appeal in this case would be filed in the Second Circuit, this Court will follow those decisions for the purpose of this case. Jack E. Golsen, 54 T.C. 742, 756 (1970). *238 From the evidence presented in this case, we think there is no doubt but that the petitioner resided in Rochester, New York, all during 1967 and 1968. He lived there with his parents originally, stayed there the entire period he worked for Consultants, moved his wife there after their marriage, and lives there now. Without reviewing all the other facts already found, it suffices to say that the evidence overwhelmingly supports the proposition that he resided in Rochester. The assertions that the petitioner lived in Baltimore because he visited his maternal grandparents there at the time 68 of his marriage, directed that his mail be sent there, and paid sporadically for the upkeep of a room have little merit. Since the petitioner lived in Rochester during 1967 and 1968 and since he also worked there, he could not be "away from home" within the meaning of sections 62(2)(B) and 162(a)(2). United States v. Correll, 389 U.S. 299 (1967). Of course, this would be equally true whether one considers his "tax home" to be the place of residence or the place of employment. As to section 62(2)(C), we believe the petitioner has failed in his burden of proof. The record is *239 devoid of any evidence regarding the origin and nature of the expenses allegedly incurred by him. Consequently, we are unable to determine if the expenses were actually incurred and, if they were, whether they were expenses of transportation paid or incurred by him "in connection with the performance by him of services as an employee". In view of the above, the per diem payments made to the petitioner by Consultants in 1967 and 1968 are income to him and there are no deductible "away from home" expenses which may be offset against such income. Issue 2. Casualty Loss Section 165[7] allows losses not connected with trade or business if they arise from "fire, storm, shipwreck, or other casualty" (emphasis supplied). The regulations [8] 69 applicable to the section are quite detailed and extensive. Basically, they provide that the casualty loss is allowable only in the year in which it is sustained and the amount of the loss is limited to the lesser of the difference in fair market value before and after the casualty or the adjusted basis of the property. *240 Without belaboring the point, we believe the petitioner has again failed to sustain his burden of proof. The only evidence presented to prove that an automobile accident actually occurred was the testimony of the petitioner himself. There were no documents of any nature which would indicate the time and place of the accident, its cause, the value of the car before the accident, or the extent of the damage. While the petitioner did indicate that after the accident and reimbursement by the insurance company, he still owed the bank $750 toward the purchase of the automobile, this fact alone is hardly sufficient to establish the amount of the casualty loss, if one did occur. In the absence of an appraisal or some similar evidence regarding the condition of the automobile before and after the accident, the Court is left to guess at what the amount still owed represents. Obviously, it could well be normal depreciation on the car. In addition, we believe that if there was a casualty loss, it occurred in 1966 and not 1967. The petitioner testified the accident took place in 1966. He accepted the insurance company settlement in 1966. He alleges that an attorney representing the girl who *241 was driving his car brought suit against the other driver. However, other than a vague and inconclusive statement that the attorney was also representing the petitioner's interests, the record is devoid of any real evidence indicating that if there ever was such a suit, the petitioner was a party to it. In view of the above, we must hold that the petitioner is not entitled to any casualty loss deduction in 1967 because (1) he has failed to establish the amount of the loss, and (2) the accident occurred in 1966 and no claim for reimbursement with respect to which there was a reasonable prospect of recovery existed as of December 31, 1966. Issue 3. Sales Tax and Interest Since the petitioner presented no evidence on the sales tax and interest deduction, he has again failed in his burden of proof and no such deductions are allowable. Reviewed and adopted as the report of the Small Tax Case Division. Decision will be entered for the respondent. Footnotes
1. The parties moved to consolidate these cases since they involved the same petitioners in each year, which Motion the Court granted.↩
2. All section references are to the Internal Revenue Code of 1954, as in effect during the years in issue, unless otherwise noted.↩
3. SEC. 61. GROSS INCOME DEFINED. (a) General Definition. - Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) to following items: (1) Compensation for services, including fees, commissions, and similar items; * * * ↩
4. SEC. 62. ADJUSTED GROSS INCOME DEFINED. For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions: * * * (2) Trade and business deductions of employees. - * * * (B) Expenses for travel away from home. - The deductions allowed by part VI (sec. 161↩ and following) which consist of expenses of travel, meals, and lodging while away from home, paid or incurred by the taxpayer in connection with the performance by him of services as an employee. 5. SEC. 62. ADJUSTED GROSS INCOME DEFINED. For purposes of this subtitle, the term "adjusted gross income" means, in the case of an individual, gross income minus the following deductions: * * * (2) Trade and business deductions of employees. - * * * (C) Transportation expenses. - The deductions allowed by part VI (sec. 161↩ and following) which consist of expenses of transportation paid or incurred by the taxpayer in connection with the performance by him of services as an employee.
6. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; and * * *↩
7. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) Amount of Deduction. - For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. (c) Limitation on Losses of Individuals. In the case of an individual, the deduction under subsection (a) shall be limited to - * * * (3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss to such individual arising from each casualty, or from each theft, exceeds $100. * * * ↩
8. Sec. 1.165-1. Losses. * * * (b) Nature of loss allowable. - To be allowable as a deduction under section 165(a), a loss must be evidenced by closed and completed transactions, fixed by identifiable events, and, except as otherwise provided in section 165(h) and § 1.165-11, relating to disaster losses, actually sustained during the taxable year. Only a bona fide loss is allowable. Substance and not mere form shall govern in determining a deductible loss. * * * (d) Year of deduction. - (1) A loss shall be allowed as a deduction under section 165(a) only for the taxable year in which the loss is sustained. For this purpose, a loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year. For provisions relating to situations where a loss attributable to a disaster will be treated as sustained in the taxable year in which the disaster actually occurred, see section 165(h) and § 1.165-11. (2)(i) If a casualty or other event occurs which may result in a loss and, in the year of such casualty or event, there exists a claim for reimbursement with respect to which there is a reasonable prospect of recovery, no portion of the loss with respect to which reimbursement may be received is sustained, for purposes of section 165, until it can be ascertained with reasonable certainty whether or not such reimbursement will be received. Whether a reasonable prospect of recovery exists with respect to a claim for reimbursement of a loss is a question of fact to be determined upon an examination of all facts and circumstances. Whether or not such reimbursement will be received may be ascertained with reasonable certainty, for example, by a settlement of the claim, by an adjudication of the claim, or by an abandonment of the claim. When a taxpayer claims that the taxable year in which a loss is sustained is fixed by his abandonment of the claim for reimbursement, he must be able to produce objective evidence of his having abandoned the claim, such as the execution of a release. Sec. 1.165-7. Casualty losses. (a) In general. - (1) Allowance of deduction. - Except as otherwise provided in paragraphs (b)(4) and (c) of this section, any loss arising from fire, storm, shipwreck, or other casualty is allowable as a deduction under section 165(a) for the taxable year in which the loss is sustained. * * * (2) Method of valuation. - (i) In determining the amount of loss deductible under this section, the fair market value of the property immediately before and immediately after the casualty shall generally be ascertained by competent appraisal. This appraisal must recognize the effects of any general market decline affecting undamaged as well as damaged property which may occur simultaneously with the casualty, in order that any deduction under this section shall be limited to the actual loss resulting from damage to the property. * * * (3) Damage to automobiles. - An automobile owned by the taxpayer, whether used for business purposes or maintained for recreation or pleasure, may be the subject of a casualty loss, including those losses specifically referred to in subparagraph (1) of this paragraph. In addition, a casualty loss occurs when an automobile owned by the taxpayer is damaged and when: (i) The damage results from the faulty driving of the taxpayer or other person operating↩